# STONE *v.* IMMIGRATION AND NATURALIZATION SERVICE

No. 93–1199.  Argued November 28, 1994—Decided April 19, 1995

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, SCALIA, THOMAS, and GINSBURG, JJ., joined. BREYER, J., filed a dissenting opinion, in which O'CONNOR and SOUTER, JJ., joined, *post*, p. 406.

*Alan B. Morrison* argued the cause for petitioner. On the briefs was *David Eric Funke.*

*Beth S. Brinkmann* argued the cause for respondent. With her on the brief were *Solicitor General Days, Assistant Attorney General Hunger,* and *Deputy Solicitor General Kneedler.*

JUSTICE KENNEDY delivered the opinion of the Court.

We consider whether the filing of a timely motion for reconsideration of a decision by the Board of Immigration Appeals tolls the running of the 90-day period for seeking judicial review of the decision.

I

Petitioner, Marvin Stone, is a citizen of Canada and a businessman and lawyer by profession. He entered the United States in 1977 as a nonimmigrant visitor for business and has since remained in the United States.

On January 3, 1983, Stone was convicted of conspiracy and mail fraud, in violation of 18 U. S. C. §§ 371 and 1341. He served 18 months of a 3-year prison term. In March 1987, after his release, the Immigration and Naturalization Service (INS) served him with an order to show cause why he should not be deported as a nonimmigrant who had remained in the United States beyond the period authorized by law. In January 1988, after a series of hearings, an Immigration Judge ordered Stone deported. The IJ concluded that under the regulations in effect when Stone entered the United States, an alien on a nonimmigrant for business visa

could remain in the country for an initial period not to exceed six months with the privilege of seeking extensions, which could be granted in 6-month increments. 8 CFR § 214.2 (b) (1977). The IJ ordered deportation under 8 U. S. C. § 1251(a)(2) (now § 1251(a)(1)(B) (1988 ed., Supp. V)) based on petitioner's testimony that he had remained in the United States since 1977 without seeking any extension. The IJ denied Stone's application for suspension of deportation under 8 U. S. C. § 1254(a)(1), concluding that Stone's conviction of mail fraud and 18-month incarceration barred him, as a matter of law, from establishing "good moral character" as required by § 1254. See § 1101(f)(7).

Stone's administrative appeals were as follows: he appealed to the Board of Immigration Appeals, which affirmed the IJ's determinations and dismissed the appeal on July 26, 1991; he filed a "Motion to Reopen and/or to Reconsider" with the BIA in August 1991; on February 3, 1993, some 17 months later, the BIA denied the reconsideration motion as frivolous.

Judicial review was sought next. The record does not give the precise date, but, sometime in February or March 1993, Stone petitioned the Court of Appeals for the Sixth Circuit for review of both the July 26, 1991, deportation order and the February 3, 1993, order denying reconsideration. The Court of Appeals dismissed the petition for want of jurisdiction to the extent the petition sought review of the July 26, 1991, order, the underlying deportation determination. The court held that the filing of the reconsideration motion did not toll the running of the 90-day filing period for review of final deportation orders. 13 F. 3d 934, 938–939 (1994). We granted certiorari, 511 U. S. 1105 (1994), to resolve a conflict among the Circuits on the question, compare *Akrap* v. *INS*, 966 F. 2d 267, 271 (CA7 1992), and *Nocon* v. *INS*, 789 F. 2d 1028, 1033 (CA3 1986) (agreeing that the filing of a reconsideration motion does not toll the statutory time limit for seeking review of a deportation order), with *Fleary*

v. *INS*, 950 F. 2d 711, 713 (CA11 1992), *Pierre* v. *INS*, 932 F. 2d 418, 421 (CA5 1991) *(per curiam)*, *Attoh* v. *INS*, 606 F. 2d 1273, 1275, n. 15 (CADC 1979), and *Bregman* v. *INS*, 351 F. 2d 401, 402–403 (CA9 1965) (holding that a petition to review a deportation order is timely if filed within the statutory period following the disposition of a timely filed reconsideration motion). We now affirm.

## II

### A

Section 106(a)(1) of the Immigration and Nationality Act (INA) specifies that "a petition for review [of a final deportation order] may be filed not later than 90 days after the date of the issuance of the final deportation order, or, in the case of an alien convicted of an aggravated felony, not later than 30 days after the issuance of such order." 8 U. S. C. § 1105a(a)(1) (1988 ed. and Supp. V). The clause pertaining to an "aggravated felony" is not a factor in the analysis, petitioner's offense not being within that defined term. See § 1101(a)(43). He had the benefit of the full 90-day filing period. There is no dispute that a deportation order "become[s] final upon dismissal of an appeal by the Board of Immigration Appeals," 8 CFR § 243.1 (1977), and, the parties agree, the 90-day period started on July 26, 1991.

The parties disagree, however, regarding the effect that petitioner's later filing of a timely motion to reconsider had on the finality of the order. Petitioner contends that a timely motion to reconsider renders the underlying order nonfinal, and that a petition seeking review of both the order and the reconsideration denial is timely if filed (as this petition was) within 90 days of the reconsideration denial. The INS argues that the finality and reviewability of an order are unaffected by the filing of a motion to reconsider or to reopen. In its view the Court of Appeals had jurisdiction to review the denial of the motion to reconsider but not to review the original order.

We considered the timeliness of a review petition where there is a motion to reconsider or reopen an agency's order in *ICC* v. *Locomotive Engineers,* 482 U. S. 270 (1987). The Interstate Commerce Commission's governing statute provided that, with certain exceptions, judicial review of ICC orders would be governed by the Hobbs Administrative Orders Review Act, 28 U. S. C. § 2341 *et seq.* See *Locomotive Engineers,* 482 U. S., at 277. We held that "the timely petition for administrative reconsideration stayed the running of the Hobbs Act's limitation period until the petition had been acted upon by the Commission." *Id.,* at 284. Our conclusion, we acknowledged, was in some tension with the language of both the Hobbs Act, which permits an aggrieved party to petition for review "within 60 days after [the] entry" of a final order, 28 U. S. C. § 2344, and of 49 U. S. C. § 10327(i), "which provides that, '[n]otwithstanding' the provision authorizing the Commission to reopen and reconsider its orders (§ 10327(g)), 'an action of the Commission . . . is final on the date on which it is served, and a civil action to enforce, enjoin, suspend, or set aside the action may be filed after that date.'" *Locomotive Engineers, supra,* at 284. We found the controlling language similar to the corresponding provision of the Administrative Procedure Act (APA), 5 U. S. C. § 704, which provides that "agency action otherwise final is final for the purposes of this section [entitled 'Actions Reviewable'] whether or not there has been presented or determined an application for . . . any form of reconsideratio[n]"— "language [that] has long been construed . . . merely to relieve parties from the *requirement* of petitioning for rehearing before seeking judicial review . . . but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal." *Locomotive Engineers, supra,* at 284–285 (citation omitted).

In support of that longstanding construction of the APA language, we cited dicta in two earlier cases, *American Farm Lines* v. *Black Ball Freight Service,* 397 U. S. 532, 541

(1970); *CAB* v. *Delta Air Lines, Inc.*, 367 U. S. 316, 326–327 (1961), and the holding in *Outland* v. *CAB*, 284 F. 2d 224, 227 (CADC 1960), a decision cited with approval in both *Black Ball* and *Delta.* *Outland* justified treating orders as non-final for purposes of review during the pendency of a motion for reconsideration in terms of judicial economy: "[W]hen the party elects to seek a rehearing there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary." *Outland, supra,* at 227.

As construed in *Locomotive Engineers* both the APA and the Hobbs Act embrace a tolling rule: The timely filing of a motion to reconsider renders the underlying order nonfinal for purposes of judicial review. In consequence, pendency of reconsideration renders the underlying decision not yet final, and it is implicit in the tolling rule that a party who has sought rehearing cannot seek judicial review until the rehearing has concluded. 4 K. Davis, Administrative Law Treatise § 26:12 (2d ed. 1988); *United Transportation Union* v. *ICC,* 871 F. 2d 1114, 1118 (CADC 1989); *Bellsouth Corp.* v. *FCC,* 17 F. 3d 1487, 1489–1490 (CADC 1994). Indeed, those Circuits that apply the tolling rule have so held. See *Fleary,* 950 F. 2d, at 711–712 (deportation order not reviewable during pendency of motion to reopen); *Hyun Joon Chung* v. *INS,* 720 F. 2d 1471, 1474 (CA9 1984) (same).

Section 106 of the INA provides that "[t]he procedure prescribed by, and all the provisions of chapter 158 of title 28, shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation . . . ." 8 U. S. C. § 1105a(a) (1988 ed. and Supp. V). The reference to chapter 158 of Title 28 is a reference to the Hobbs Act. In light of our construction of the Hobbs Act in *Locomotive Engineers,* had Congress used that Act to govern review of deportation orders without further qualification, it would follow that the so-called tolling rule applied.

The INS, however, proffers a different reading of *Locomotive Engineers*. Relying on our statement that the provision of the APA, 5 U. S. C. § 704, has been construed "not to *prevent* petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal," 482 U. S., at 285 (emphasis supplied), the INS understands *Locomotive Engineers* to set forth merely a default rule from which agencies may choose to depart. It argues that it did so here.

If the case turned on this theory, the question would arise whether an agency subject to either the APA or the Hobbs Act has the authority to specify whether the finality of its orders for purposes of judicial review is affected by the filing of a motion to reconsider. The question is not presented here. Both the Hobbs Act and the APA are congressional enactments, and Congress may alter or modify their application in the case of particular agencies. We conclude that in amending the INA Congress chose to depart from the ordinary judicial treatment of agency orders under reconsideration.

B

Congress directed that the Hobbs Act procedures would govern review of deportation orders, except for 10 specified qualifications. See 8 U. S. C. § 1105a(a). Two of those exceptions are pertinent. The first, contained in § 106(a)(1) of the INA, provides an alien with 90 days to petition for review of a final deportation order (30 days for aliens convicted of an aggravated felony), instead of the Hobbs Act's 60-day period. See 8 U. S. C. § 1105a(a)(1) (1988 ed., Supp. V). The second and decisive exception is contained in § 106(a)(6), a provision added when Congress amended the INA in 1990. The section provides:

> "[W]henever a petitioner seeks review of an order under this section, any review sought with respect to a motion to reopen or reconsider such an order shall be

consolidated with the review of the order." 8 U. S. C. § 1105a(a)(6).

By its terms, § 106(a)(6) contemplates two petitions for review and directs the courts to consolidate the matters. The words of the statute do not permit us to say that the filing of a petition for reconsideration or reopening dislodges the earlier proceeding reviewing the underlying order. The statute, in fact, directs that the motion to reopen or reconsider is to be consolidated with the review of the order, not the other way around. This indicates to us that the action to review the underlying order remains active and pending before the court. We conclude that the statute is best understood as reflecting an intent on the part of Congress that deportation orders are to be reviewed in a timely fashion after issuance, irrespective of the later filing of a motion to reopen or reconsider.

Were a motion for reconsideration to render the underlying order nonfinal, there would be, in the normal course, only one petition for review filed and hence nothing for the judiciary to consolidate. As in *Locomotive Engineers* itself, review would be sought after denial of reconsideration, and both the underlying order and the denial of reconsideration would be reviewed in a single proceeding, insofar, at least, as denial of reconsideration would be reviewable at all. See *Locomotive Engineers*, 482 U. S., at 280. Indeed, the Ninth Circuit, which before the 1990 amendment had held that pendency of a reconsideration motion did render a deportation order nonfinal, understood that the tolling rule contemplates just one petition for review: "Congress visualized a single administrative proceeding in which all questions relating to an alien's deportation would be raised and resolved, followed by a single petition in a court of appeals for judicial review . . . ." *Yamada* v. *INS*, 384 F. 2d 214, 218 (CA9 1967). The tolling rule is hard to square with the existence of two separate judicial review proceedings.

Under the no-tolling rule, by contrast, two separate petitions for review will exist in the normal course. An order would be final when issued, irrespective of the later filing of a reconsideration motion, and the aggrieved party would seek judicial review of the order within the specified period. Upon denial of reconsideration, the petitioner would file a separate petition to review that second final order. Because it appears that only the no-tolling rule could give rise to two separate petitions for review simultaneously before the courts, which it is plain § 106(a)(6) contemplates, it would seem that only that rule gives meaning to the section.

Although the consolidation provision does not mention tolling, see *post*, at 408 (BREYER, J., dissenting), tolling would be the logical consequence if the statutory scheme provided for the nonfinality of orders upon the filing of a reconsideration motion. *Locomotive Engineers'* conclusion as to tolling followed as a necessary consequence from its conclusion about finality. Finality is the antecedent question, and as to that matter the consolidation provision speaks volumes. All would agree that the provision envisions two petitions for review. See *post*, at 408 (BREYER, J., dissenting). Because only "final deportation order[s]" may be reviewed, 8 U. S. C. § 1105a(a)(1), it follows by necessity that the provision requires for its operation the existence of two separate final orders, the petitions for review of which could be consolidated. The two orders cannot remain final and hence the subject of separate petitions for review if the filing of the reconsideration motion rendered the original order nonfinal. It follows that the filing of the reconsideration motion does not toll the time to petition for review. By speaking to finality, the consolidation provision does say quite a bit about tolling.

Recognizing this problem, petitioner at oral argument sought to give meaning to § 106(a)(6) by offering a different version of what often might occur. Petitioner envisioned an alien who petitioned for review of a final deportation order,

and, while the petition was still pending, went back to the agency to seek its reconsideration or, if new evidence had arisen, reopening. If, upon denial of reconsideration or reopening, the alien sought review, and the review of the original order were still pending, § 106(a)(6) would apply and the two petitions would be consolidated. The dissent relies on the same assumed state of events. See *post,* at 409–410.

That construct, however, is premised on a view of finality quite inconsistent with the tolling rule petitioner himself proposes. If, as petitioner advocates, the filing of a timely petition for reconsideration before seeking judicial review renders the underlying order nonfinal, so that a reviewing court would lack jurisdiction to review the order until after disposition of the reconsideration motion, one wonders how a court retains jurisdiction merely because the petitioner delays the reconsideration motions until after filing the petition for judicial review of the underlying order. The policy supporting the nonfinality rule—that "when the party elects to seek a rehearing there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary," *Outland,* 284 F. 2d, at 227—applies with equal force where the party seeks agency rehearing after filing a petition for judicial review. Indeed, the Court of Appeals for the District of Columbia Circuit, whose decision in *Outland* we cited in support of our construction in *Locomotive Engineers,* has so held in the years following our decision. See *Wade* v. *FCC,* 986 F. 2d 1433, 1434 (1993) *(per curiam)* ("The danger of wasted judicial effort . . . arises whether a party seeks agency reconsideration before, simultaneous with, or after filing an appeal or petition for judicial review") (citations omitted). The *Wade* holding rested on, and is consistent with, our decision in a somewhat analogous context that the filing of a Federal Rule of Civil Procedure 59 motion to alter or amend a district court's judgment strips the appellate court of jurisdiction, whether the Rule 59 motion is filed before or after the notice of appeal. See *Griggs*

v. *Provident Consumer Discount Co.*, 459 U. S. 56, 61 (1982) *(per curiam).* Our decision, based on a construction of Federal Rule of Appellate Procedure 4(a)(4), noted the "theoretical inconsistency" of permitting the district court to retain jurisdiction to decide the Rule 59 motion while treating the notice of appeal as "adequate for purposes of beginning the appeals process." *Griggs, supra,* at 59.

We need not confirm the correctness of the *Wade* decision, but neither should we go out of our way to say it is incorrect, as petitioner and the dissent would have us do. The inconsistency in petitioner's construction of § 106(a)(6) is the same inconsistency that we noted in *Griggs.* Petitioner assumes that a reconsideration motion renders the underlying order nonfinal if the motion is filed before a petition for review, but that finality is unaffected if the reconsideration motion is filed one day after the petition for review. It is implausible that Congress would direct different results in the two circumstances. At any rate, under petitioner's construction the consolidation provision would have effect only in the rarest of circumstances.

When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect. See *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, 339 (1979) (Court must construe statute to give effect, if possible, to every provision); *Moskal* v. *United States*, 498 U. S. 103, 109–111 (1990) (same). Had Congress intended review of INS orders to proceed in a manner no different from review of other agencies, as petitioner appears to argue, there would have been no reason for Congress to have included the consolidation provision. The reasonable construction is that the amendment was enacted as an exception, not just to state an already existing rule. Section 106(a)(6) is an explicit exception to the general applicability of the Hobbs Act procedures, so it must be construed as creating a procedure different from normal practice under the Act. We conclude, as did the Court of Appeals, see 13 F. 3d, at 938, and the Seventh

Circuit, see *Akrap*, 966 F. 2d, at 271, that the consolidation provision Congress inserted when it amended the Act in 1990 is best understood as reflecting its expectation that in the particular context of INS deportation orders the normal tolling rule will not apply.

## C

Underlying considerations of administrative and judicial efficiency, as well as fairness to the alien, support our conclusion that Congress intended to depart from the conventional tolling rule in deportation cases.

Deportation orders are self-executing orders, not dependent upon judicial enforcement. This accounts for the automatic stay mechanism, the statutory provision providing that service of the petition for review of the deportation order stays the deportation absent contrary direction from the court or the alien's aggravated felony status. See 8 U. S. C. § 1105a(a)(3). The automatic stay would be all but a necessity for preserving the jurisdiction of the court, for the agency might not otherwise refrain from enforcement. Indeed, the INA provides that "nothing in this section [Judicial review of orders of deportation and exclusion] shall be construed to require the Attorney General to defer deportation of an alien after the issuance of a deportation order because of the right of judicial review of the order granted by this section." 8 U. S. C. § 1105a(a)(8) (1988 ed., Supp. V). And it has been the longstanding view of the INS, a view we presume Congress understood when it amended the Act in 1990, that a motion for reconsideration does not serve to stay the deportation order. 8 CFR § 3.8 (1977). Cf. *Delta Air Lines*, 367 U. S., at 325–327 (certificate of public convenience and necessity effective when issued though not final for purposes of judicial review because of pendency of reconsideration motion).

Were the tolling rule to apply here, aliens subject to deportation orders might well face a Hobson's choice: petition for agency reconsideration at the risk of immediate deporta-

tion, or forgo reconsideration and petition for review to obtain the automatic stay. The choice is a hard one in deportation cases, in that the consequences of deportation are so final, unlike orders in some other administrative contexts. Once an alien has been deported, the courts lack jurisdiction to review the deportation order's validity. See 8 U. S. C. § 1105a(c). This choice is one Congress might not have wished to impose on the alien.

An alien who had filed for agency reconsideration might seek to avoid immediate deportation by seeking a judicial stay. At oral argument, petitioner suggested a habeas corpus action as one solution to the dilemma. Even on the assumption that a habeas corpus action would be available, see § 1105a(a) (Exclusiveness of procedure), the solution is unsatisfactory. In evaluating those stay applications the courts would be required to assess the probability of the alien's prevailing on review, turning the stay proceedings into collateral previews of the eventual petitions for review—indeed a preview now implicating the district court, not just the court of appeals. By inviting duplicative review in multiple courts, the normal tolling rule would frustrate, rather than promote, its stated goal of judicial economy.

From an even more fundamental standpoint, the policies of the tolling rule are at odds with Congress' policy in adopting the judicial review provisions of the INA. The tolling rule reflects a preference to postpone judicial review to ensure completion of the administrative process. Reconsideration might eliminate the need for judicial intervention, and the resultant saving in judicial resources ought not to be diminished by premature adjudication. By contrast, Congress' "fundamental purpose" in enacting § 106 of the INA was "to abbreviate the process of judicial review ... in order to frustrate certain practices ... whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts." *Foti* v. *INS*, 375 U. S. 217, 224 (1963). Congress' concern reflected the reality that "in a deportation

proceeding . . . as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *INS* v. *Doherty,* 502 U. S. 314, 321–325 (1992). Congress' intent in adopting and then amending the INA was to expedite both the initiation and the completion of the judicial review process. The tolling rule's policy of delayed review would be at odds with the congressional purpose.

The dissent does not dispute that a principal purpose of the 1990 amendments to the INA was to expedite petitions for review and to redress the related problem of successive and frivolous administrative appeals and motions. In the Immigration Act of 1990, Pub. L. 101–649, 104 Stat. 5048, Congress took five steps to reduce or eliminate these abuses. First, it directed the Attorney General to promulgate regulations limiting the number of reconsideration and reopening motions that an alien could file. § 545(b). Second, it instructed the Attorney General to promulgate regulations specifying the maximum time period for the filing of those motions, hinting that a 20-day period would be appropriate. See *ibid.* Third, Congress cut in half the time for seeking judicial review of the final deportation order, from 180 to 90 days. See *ibid.* Fourth, Congress directed the Attorney General to define "frivolous behavior for which attorneys may be sanctioned" in connection with administrative appeals and motions. See § 545(a). In the dissent's view, a fifth measure, the consolidation provision, was added for no apparent reason and bears no relation to the other amendments Congress enacted at the same time. It is more plausible that when Congress took the first four steps to solve a problem, the fifth—the consolidation provision—was also part of the solution, and not a step in the other direction. By envisioning that a final deportation order will remain final and reviewable for 90 days from the date of its issuance irrespective of the later filing of a reconsideration motion, Congress' amendment eliminates much if not all of the incen-

tive to file a meritless reconsideration motion, and, like the other amendments adopted at the same time, expedites the time within which the judicial review process of the deportation order begins.

### D

A consideration of the analogous practice of appellate court review of district court judgments confirms the correctness of our construction of Congress' language. The closest analogy to the INS' discretionary petition for agency reconsideration is the motion for relief from judgment under Federal Rule of Civil Procedure 60(b). The effect of Rule 60(b) motions (at least when made more than 10 days after judgment, an exception discussed below), on the finality and appealability of district court judgments is comparable to the effect of reconsideration motions on INS orders. With the exception noted, the filing of a Rule 60(b) motion does not toll the running of the time for taking an appeal, see Fed. Rule Civ. Proc. 60(b); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2871 (1973) (Wright & Miller), and the pendency of the motion before the district court does not affect the continuity of a prior-taken appeal. See *ibid.* And last but not least, the pendency of an appeal does not affect the district court's power to grant Rule 60 relief. See *Standard Oil Co. of Cal.* v. *United States,* 429 U. S. 17, 18–19 (1976) *(per curiam);* Wright & Miller § 2873 (1994 Supp.). A litigant faced with an unfavorable district court judgment must appeal that judgment within the time allotted by Federal Rule of Appellate Procedure 4, whether or not the litigant first files a Rule 60(b) motion (where the Rule 60 motion is filed more than 10 days following judgment). Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court. The denial of the motion is appealable as a separate final order, and if the original appeal is still pending it would seem that the court of appeals can consolidate the proceedings. In each of these respects, the practice of litigants under Rule 60(b) is, under

our construction, identical to that of aliens who file motions for reconsideration before the BIA. In each case two separate postdecision appeals are filed.

For reasons not relevant here, in 1991 the Rules of Appellate Procedure were amended to provide that Rule 60(b) motions filed within 10 days of a district court's judgment do toll the time for taking an appeal. See Fed. Rule App. Proc. 4(a)(4)(F). That amendment added Rule 60(b) motions filed within 10 days of judgment to a list of other post-trial motions that toll the running of the time for appeal, a list that includes Rule 59 motions to alter or amend a judgment. See Fed. Rule App. Proc. 4(a)(4)(C). A consideration of this provision of the appellate rules is quite revealing. The list of post-trial motions that toll the time for appeal is followed, and hence qualified, by the language interpreted in *Griggs*, language that provides in express terms that these motions also serve to divest the appellate court of jurisdiction where the motions are filed after appeal is taken.

The language of Rule 4 undermines the dissent's reliance on a presumption that appellate court jurisdiction once asserted is not divested by further proceedings at the trial or agency level. See *post*, at 410. Indeed, the practice is most often to the contrary where appellate court review of district court judgments subject to post-trial motions is concerned. See Fed. Rule App. Proc. 4(a)(4) (specifying that the majority of postjudgment motions filed with the district court divest the appellate court of jurisdiction that had once existed). A district court judgment subject to one of these enumerated motions, typified by Rule 59, is reviewable only after, and in conjunction with, review of the denial of the post-trial motion, and just one appeal pends before the appellate court at any one time.

In short, the Rules of Appellate Procedure evince a consistent and coherent view of the finality and appealability of district court judgments subject to post-trial motions. The majority of post-trial motions, such as Rule 59, render the

underlying judgment nonfinal both when filed before an appeal is taken (thus tolling the time for taking an appeal), and when filed after the notice of appeal (thus divesting the appellate court of jurisdiction). Other motions, such as Rule 60(b) motions filed more than 10 days after judgment, do not affect the finality of a district court's judgment, either when filed before the appeal (no tolling), or afterwards (appellate court jurisdiction not divested). Motions that do toll the time for taking appeal give rise to only one appeal in which all matters are reviewed; motions that do not toll the time for taking an appeal give rise to two separate appellate proceedings that can be consolidated.

### E

Our colleagues in dissent agree that the consolidation provision envisions the existence of two separate petitions for review. See *post*, at 408. To give the provision meaning while at the same time concluding that the tolling rule applies, the dissent is compelled to conclude that a reconsideration motion before the BIA renders the original order nonfinal if made before a petition for judicial review is filed but does not affect the finality of the order if filed afterwards. See *post*, at 413–414. The hybrid tolling rule the dissent suggests has no analogue at all in the appellate court-district court context. On the contrary, as we have just observed, the uniform principle where appellate review of district court judgments is concerned is that motions that toll produce but one appeal, motions that do not toll produce two. It is only by creating this new hybrid that the dissent can give meaning to the consolidation provision, and avoid the Hobson's choice for the alien. While litigants who practice before the district courts and the BIA will have familiarity with both types of post-trial motions discussed above, and will have no difficulty practicing under the rule we announce today, practitioners would have no familiarity with the hy-

brid tolling rule the dissent is compelled to devise in order to give the consolidation provision meaning.

˙ It is worthwhile pausing to consider just how many steps the dissent must take to reconcile the consolidation provision with the tolling rule it prefers. The dissent's construction would require that the Court conclude, without any briefing, that our decision in *Griggs* does not apply to agency review. The dissent would as well disrupt administrative law in general by overturning the practice of the Court of Appeals with the most experience reviewing agency decisions when faced with agency reconsideration motions made after petition for review (the District of Columbia Circuit), thereby resolving a circuit split without any briefing or argument. See *post*, at 412. Our construction avoids each of these extraordinary steps. It creates a practice parallel to that of appellate courts reviewing district court judgments subject to pending Rule 60(b) motions filed more than 10 days after judgment and requires us to take no firm position on whether *Griggs* applies to agency review where tolling does occur.

But the full import of our decision in *Griggs*, and the concomitant problem addressed in *Wade*, are in some sense secondary to our fundamental point of dispute with the dissent. In our view the consolidation provision reflects Congress' intent to depart from the normal tolling rule in this context, whereas on the dissent's view it does not. Congress itself was explicit in stating that the consolidation provision is an exception to the applicability of the Hobbs Act procedures, see *supra*, at 393, and it took the deliberate step of amending the Act in 1990 to add the provision. The challenge for the dissent is not, then, just to give the consolidation provision some work to do that is consistent with the tolling rule, but to give it some work as an exception to the applicability of the Hobbs Act procedures, a meaning that explains why Congress might have taken trouble to add it. The dissent's construction of the consolidation provision gives it effect, if any, only in what must be those rare instances where aliens first

petition for judicial review and then seek agency reconsideration. And, more important, its construction cannot account for Congress' decision to amend the Act in 1990 to provide that the Hobbs Act procedures, which in the normal course include the tolling rule, shall apply "except" for the consolidation provision.

### F

Whatever assessment Congress might have made in enacting the judicial review provisions of the INA in the first instance, we conclude from the consolidation provision added in 1990 that it envisioned two separate petitions filed to review two separate final orders. To be sure, it would have been preferable for Congress to have spoken with greater clarity. Judicial review provisions, however, are jurisdictional in nature and must be construed with strict fidelity to their terms. As we have explained:

> "Section 106(a) is intended exclusively to prescribe and regulate a portion of the jurisdiction of the federal courts. As a jurisdictional statute, it must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes." *Cheng Fan Kwok* v. *INS*, 392 U. S. 206, 212 (1968).

This is all the more true of statutory provisions specifying the timing of review, for those time limits are, as we have often stated, "mandatory and jurisdictional," *Missouri* v. *Jenkins*, 495 U. S. 33, 45 (1990), and are not subject to equitable tolling. See Fed. Rule App. Proc. 26(b).

\* \* \*

The consolidation provision in § 106(a)(6) reflects Congress' understanding that a deportation order is final, and reviewable, when issued. Its finality is not affected by the subsequent filing of a motion to reconsider. The order being final when issued, an alien has 90 days from that date to seek review. The alien, if he chooses, may also seek agency re-

consideration of the order and seek review of the disposition upon reconsideration within 90 days of its issuance. Where the original petition is still before the court, the court shall consolidate the two petitions. See 8 U. S. C. § 1105a(a)(6) (1988 ed., Supp. V).

Because Stone's petition was filed more than 90 days after the issuance of the BIA's July 26, 1991, decision, the Court of Appeals lacked jurisdiction to review that order.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE BREYER, with whom JUSTICE O'CONNOR and JUSTICE SOUTER join, dissenting.

The majority reads § 106(a) of the Immigration and Nationality Act (INA), 8 U. S. C. § 1105a(a) (1988 ed., Supp. V), as creating an exception to the ordinary legal rules that govern the interaction of (1) motions for agency reconsideration with (2) time limits for appeals. In my view, the statute does not create such an exception. And, reading it to do so risks unnecessary complexity in the technical, but important, matter of how one petitions a court for judicial review of an adverse agency decision. For these reasons, I dissent.

This Court, in *ICC* v. *Locomotive Engineers*, 482 U. S. 270 (1987), considered the interaction between reconsideration motions and appeal time limits when one wants to petition a court of appeals to review an adverse judgment of an administrative agency (which I shall call an "agency/court" appeal). The Court held that this interaction resembled that which takes place between (1) an appeal from a district court judgment to a court of appeals (which I shall call a "court/court" appeal) and (2) certain motions for district court reconsideration, namely, those filed soon after entry of the district court judgment. See Fed. Rule App. Proc. 4(a)(4). The relevant statute (commonly called the Hobbs Act) said that a petition for review of a final agency order may be filed in the court

of appeals "within 60 days after its entry." 28 U. S. C. § 2344. The Court concluded, on the basis of precedent, that the filing of a proper petition for reconsideration, "within the period allotted for judicial review of the original order . . . tolls the period for judicial review of the original order." 482 U. S., at 279. That order can "be appealed to the courts . . . after the petition for reconsideration is denied." *Ibid.* See also *id.*, at 284–285.

In my view, we should interpret the INA as calling for tolling, just as we interpreted the Hobbs Act in *Locomotive Engineers.* For one thing, the appeals time limit language in the INA is similar to that in the Hobbs Act. Like the Hobbs Act, the INA does not mention tolling explicitly; it simply says that "a petition for review may be filed not later than 90 days after the date of the issuance of the final deportation order." INA § 106(a)(1), 8 U. S. C. § 1105a(a)(1) (1988 ed., Supp. V). More importantly, the INA explicitly states that the "procedure prescribed by, and all the provisions of [the Hobbs Act, 28 U. S. C. § 2341 *et seq.,*] shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation." INA § 106(a), 8 U. S. C. § 1105a(a). This statutory phrase is not conclusive because it is followed by several exceptions, one of which is the subsection setting the "[t]ime for filing [a] petition" for review. INA § 106(a)(1), 8 U. S. C. § 1105a(a)(1). But, the context suggests that the reason for calling the latter clause an exception lies in the *number of days* permitted for filing— 90 in the INA, as opposed to 60 in the Hobbs Act. Nothing in the language of § 106(a) (which was amended three years after *Locomotive Engineers,* see Immigration Act of 1990, § 545(b), 104 Stat. 5065) suggests any further exception in respect to tolling.

Finally, interpreting the INA and the Hobbs Act consistently makes it easier for the bar to understand, and to follow, these highly technical rules. With consistent rules, a non-immigration-specialist lawyer (say, a lawyer used to working

in the ordinary agency/court context) who seeks reconsideration of a Board of Immigration Appeals (BIA) decision is less likely to lose his client's right to appeal simply through inadvertence.

The majority reaches a different conclusion because it believes that one subsection of the INA, § 106(a)(6), is inconsistent with the ordinary *Locomotive Engineers* tolling rule. That subsection says that

> "whenever a petitioner seeks [(1)] review of [a final deportation] order . . . any [(2)] review sought with respect to a motion to reopen or reconsider such an order shall be consolidated with the review of the order." 8 U. S. C. § 1105a(a)(6) (1988 ed., Supp. V).

This "consolidation" subsection, however, says nothing about tolling. Indeed, it does not address, even in a general way, the timing of petitions for judicial review; it just says what must happen when two reviews make it separately to the court of appeals and are on the court's docket at the same time (*i. e.,* they must be consolidated). And, the legislative history is likewise silent on the matter. See, *e. g.,* H. R. Conf. Rep. No. 101–955, pp. 132–133 (1990). Given that § 106(a)(6) was enacted only three years after *Locomotive Engineers*, it seems unlikely that Congress consciously created a significantly different approach to the review-deadline/reconsideration-petition problem (with the consequent risk of confusing lawyers) in so indirect a manner.

Nevertheless, the majority believes this subsection is *inconsistent* with the ordinary *Locomotive Engineers* tolling rule because application of the ordinary tolling rule would normally lead an alien to appeal both (1) the original deportation order and (2) a denial of agency reconsideration, in a single petition, after the denial takes place. Thus, in the majority's view, one could never find (1) a petition to review an original deportation order and (2) a petition to review a denial of a motion to reconsider that order, properly together

in the court of appeals at the same time. And, for that reason, there would be nothing to "consolidate" under the statute. An opposite rule (one which denies tolling) would, in the majority's view, sometimes produce (simultaneously) both (1) an initial appeal from the original order and (2) an appeal from a denial of reconsideration (if the reconsideration motion were decided, and the second appeal taken, before the court could decide the initial appeal). The "no-tolling" rule would therefore sometimes produce two appeals, ready for consolidation. The majority concludes that it must infer this "no-tolling" rule in order to give the "consolidation" subsection some work to do and thereby make it legally meaningful.

I do not believe it necessary, however, to create a special exception from the ordinary *Locomotive Engineers* tolling rule in order to make the "consolidation" subsection meaningful, for even under that ordinary tolling rule, the "consolidation" subsection will have work to do. Consider the following case: The BIA enters a final deportation order on Day Zero. The alien files a timely petition for review in a court of appeals on Day 50. Circumstances suddenly change—say, in the alien's home country—and on Day 70 the alien then files a motion to reopen with the agency. (The majority says such a filing "must be" a "rare" happening, *ante*, at 404, but I do not see why. New circumstances justifying reopening or reconsideration might arise at any time. Indeed, this situation must arise with some frequency, since INS regulations expressly recognize that a motion to reopen or reconsider may be filed after judicial review has been sought. See, *e. g.*, 8 CFR §3.8(a) (1994) (requiring that motions to reopen or reconsider state whether the validity of the order to be reopened has been, or is, the subject of a judicial proceeding).) The agency denies the reconsideration motion on Day 100. The alien then appeals that denial on Day 110. In this case, the court of appeals would have before it two appeals: the appeal filed on Day 50 and the appeal filed on

Day 110. The "consolidation" subsection tells the court of appeals to consolidate those two appeals and decide them together. (In fact, the alien might well have informed the court of appeals, say on Day 70, about the reconsideration motion, in which case the court, unless it thought the motion a frivolous stalling device, might have postponed decision on the merits of the initial appeal, awaiting the results of the reconsideration decision, an appeal from which it could then consolidate with the initial appeal. See, e. g., *Gebremichael* v. *INS*, 10 F. 3d 28, 33, n. 13 (CA1 1993) (decision on appeal stayed until the agency resolved alien's motion for reconsideration; initial appeal then consolidated with the appeal from the denial of rehearing).) In this example, the subsection would have meaning as an "exception" to the Hobbs Act, cf. *ante*, at 404–405, since nothing in the Hobbs Act requires the consolidation of court reviews.

The majority understands this counterexample, but rejects it, for fear of creating both a conceptual and a precedential problem. Neither of those perceived problems, however, is significant. The conceptual problem the majority fears arises out of the fact that, under the ordinary tolling rule, the filing of a petition for reconsideration is deemed to render an otherwise "final" initial (but not-yet-appealed) order "nonfinal" for purposes of court review. Hence, one may not appeal the merits of that initial order until the district court or agency finally decides the reconsideration petition. The majority believes that the reconsideration petition in the counterexample above (a petition filed *after* an appeal is taken from the initial order) also renders "nonfinal," and hence not properly appealable, the initial order, removing the initial appeal from the court of appeals, and thereby leaving nothing to consolidate.

The answer to this conceptual argument lies in the "general principle" that "jurisdiction, once vested, is not divested, although a state of things should arrive in which original jurisdiction could not be exercised." *United States* v. *The*

*Little Charles*, 26 F. Cas. 979, 982 (No. 15,612) (CC Va. 1818) (Marshall, C. J., Circuit Justice), quoted in *Republic Nat. Bank of Miami* v. *United States*, 506 U. S. 80 (1992). The first appeal, as of Day 50, has reached the court of appeals. Thus, conceptually speaking, one should not consider a later filed motion for reconsideration as having "divested" the court of jurisdiction. And, practically speaking, it makes sense to leave the appeal there, permitting the court of appeals to decide it, or to delay it, as circumstances dictate (say, depending upon the extent to which effort and resources already have been expended in prosecuting and deciding the appeal). After all, we have long recognized that courts have inherent power to stay proceedings and "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis* v. *North American Co.*, 299 U. S. 248, 254 (1936); cf. 28 U. S. C. § 1367(c)(3) (1988 ed., Supp. V) (providing that district court may, but need not, decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it has original jurisdiction).

The precedential problem, in the majority's view, arises out of *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56 (1982) *(per curiam)*, a court/court case in which this Court held that the filing of a reconsideration motion under Federal Rule of Civil Procedure 59 caused an earlier filed notice of appeal to " 'self-destruc[t],' " 459 U. S., at 61, despite the fact that the earlier-filed notice had "vested" the Court of Appeals with "jurisdiction." Were the same principle to apply in the agency/court context, then the reconsideration motion filed on Day 70 would cause the earlier filed petition for review, filed on Day 50, to "self-destruct," leaving nothing for the court of appeals to consolidate with an eventual appeal from an agency denial of a reconsideration motion (on Day 100).

*Griggs*, however, does not apply in the agency/court context. This Court explicitly rested its decision in *Griggs* upon the fact that a specific Federal Rule of Appellate Proce-

dure, Rule 4(a)(4), provides for the "self-destruction." That Rule says that upon the filing of, say, a Rule 59 motion to amend a district court judgment, a "notice of appeal filed before the disposition of [*e. g.*, that Rule 59 motion] shall have no effect." By its terms, Rule 4(a)(4) applies only in the court/court context; and, to my knowledge, there is no comparable provision applicable in agency/court contexts such as this one. In the absence of such a provision, *Griggs* explicitly adds that the "district courts and courts of appeals *would both have had the power to modify the same judgment*," 459 U. S., at 60 (emphasis added)—as I believe the agency and the Court of Appeals have here.

I recognize that at least one Court of Appeals has adopted an agency/court rule analogous to the "self-destruct" rule set forth in Rule 4(a)(4). *Wade* v. *FCC*, 986 F. 2d 1433, 1434 (CADC 1993) *(per curiam);* see also *Losh* v. *Brown,* 6 Vet. App. 87, 89 (1993). But see *Berroteran-Melendez* v. *INS,* 955 F. 2d 1251, 1254 (CA9 1992) (court retains jurisdiction when motion to reopen is filed after the filing of a petition for judicial review); *Lozada* v. *INS,* 857 F. 2d 10, 12 (CA1 1988) (court retained jurisdiction over petition for review notwithstanding later filed motion to reopen, but held case in abeyance pending agency's decision on the motion). That court's conclusion, however, was based upon a single observation: that "[t]he danger of wasted judicial effort that attends the simultaneous exercise of judicial and agency jurisdiction arises whether a party seeks agency reconsideration before, simultaneous with, or after filing an appeal." *Wade, supra,* at 1434 (citations omitted) (referring to the danger that the agency's ruling might change the order being appealed, thereby mooting the appeal and wasting any appellate effort expended). While this observation is true enough, it does not justify the "self-destruct" rule, because it fails to take into account other important factors, namely, (a) the principle that jurisdiction, once vested, is generally not divested, and (b) the fact that, in some cases (say, when

briefing and argument already have been completed in the court of appeals) judicial economy may actually weigh *against* stripping the court of jurisdiction. On this last point, it is significant that under the Federal Rules, the motions to revise or reopen court judgments that cause an earlier filed appeal to "self-destruct" must be filed within a few days after the entry of judgment. See, *e. g.*, Fed. Rule Civ. Proc. 4(a)(4) (10 days). The agency rules before us, in contrast, permit a motion for reconsideration (or reopening) well after the entry of the agency's final order. See 8 CFR § 3.8(a) (1994) (no time limit on motion for reconsideration filed with BIA). See also, *e. g.*, 10 CFR § 2.734(a)(1) (1995) (Nuclear Regulatory Commission may consider untimely motion to reopen where "grave issue" raised). This timing difference means that it is less likely in the court/court context than in the agency/court context that "self-destruction" of an earlier filed notice of appeal would interrupt (and therefore waste) a court of appeals review already well underway. Consequently, this Court should not simply assume that the court/court rule applies in the agency/court context.

The majority ultimately says we ought not decide whether the "self-destruct" rule applies in the agency/court context. *Ante*, at 397, 404. But, the decision cannot be avoided. That is because the *majority's* basic argument—that a tolling rule would deprive the consolidation subsection of meaning—depends upon the assumption that the "self-destruct" rule does apply. And, for the reasons stated above, that assumption is not supported by any statutory or rule-based authority.

Because this matter is so complicated, an analogy to the court/court context may help. In that context, in a normal civil case, a losing party has 30 days to file an appeal (60, if the Government is a party). Fed. Rule App. Proc. 4(a)(1). The Rules then distinguish between two kinds of reconsideration motions: those filed within 10 days (including motions for relief from judgment under Federal Rule of Civil Proce-

dure 60(b)), which toll the time for appeal, and those filed after 10 days (in the main, other Rule 60(b) motions), which do not toll the time for appeal. See Fed. Rule App. Proc. 4(a)(4). When a party files a motion of the first sort (which I shall call an "immediate" reconsideration motion), a previously filed notice of appeal "self-destructs." *Ibid.* When a party files a motion of the second sort (which I shall call a "distant" reconsideration motion), a previously filed notice of appeal remains valid. A complex set of rules creates this system, and lawyers normally refer to those rules in order to understand what they are supposed to do. See Fed. Rule App. Proc. 4(a) (and Rules of Civil Procedure cited therein).

Agency reconsideration motions are sometimes like "immediate" court reconsideration motions, filed soon after entry of a final order, but sometimes they are like "distant" reconsideration motions, filed long after entry of a final order. (Petitioner in this case filed his motion 35 days after entry of an order that he had 90 days to appeal.) The problem before us is that we lack precise rules, comparable to the Federal Rules of Appellate and Civil Procedure, that distinguish (for appeal preserving purposes) between the "immediate" and the "distant" reconsideration motion. We therefore must read an immigration statute, silent on these matters, in one of three possible ways: (1) as creating rules that make Federal Rules-type distinctions; (2) in effect, as analogizing an agency reconsideration motion to the "distant" court reconsideration motion (and denying tolling); or (3) in effect, as analogizing an agency reconsideration motion to the "immediate" court reconsideration motion (and permitting tolling).

The first possibility is a matter for the appropriate Rules Committees, not this Court. Those bodies can focus directly upon the interaction of reconsideration motions and appellate time limits; they can consider relevant similarities and differences between agency/court and court/court appeals; and they can consider the relevance of special, immigration-

related circumstances, such as the fact that the filing of a petition for review from a "final" deportation order automatically stays deportation, INA § 106(a)(3), 8 U. S. C. § 1105a(a)(3) (1988 ed., Supp. V). The second possibility (that adopted by the majority) creates a serious risk of unfair loss of a right to appeal, because it is inconsistent with *Locomotive Engineers* (thereby multiplying complexity). And, it has no basis in the INA, which generally incorporates the procedures of the Hobbs Act and the text and history of which simply do not purport to make an exception denying tolling. The third possibility, in my view, is the best of the three, for it promotes uniformity in practice among the agencies; it is consistent with the Hobbs Act, whose procedures the INA generally adopts; and it thereby helps to avoid inadvertent or unfair loss of the right to appeal.

The upshot is that *Locomotive Engineers, Griggs,* the language of the immigration statute before us, the language of the Federal Rules, and various practical considerations together argue for an interpretation of INA § 106(a) that both (1) permits the filing of a motion for reconsideration to toll the time for petitioning for judicial review (when no petition for review has yet been filed), and (2) permits court review that has already "vested" in the court of appeals to continue there (when the petition for review was filed prior to the filing of the motion for reconsideration). This interpretation simply requires us to read the language of the INA as this Court read the Hobbs Act in *Locomotive Engineers.* It would avoid creating any "Hobson's choice" for the alien, cf. *ante,* at 398–399, for an alien could both appeal (thereby obtaining an automatic stay of deportation, INA § 106(a)(3), 8 U. S. C. § 1105a(a)(3)), and then also petition for reconsideration. And, it would avoid entrapping the unwary lawyer who did not immediately file a petition for court review, thinking that a reconsideration petition would toll the appeal time limit as it does in other agency/court contexts.

This approach does not undermine Congress' goal of expediting the deportation-order review process. Although the court of appeals might postpone decision of an appeal pending the agency's decision on a later filed motion to reopen or reconsider, it need not do so. If the motion is frivolous, or made for purposes of delay, the INS can call that fact to the court's attention. And, of course, the agency can simply decide the motion quickly. The alien could prevent the court of appeals from acting by not filing an appeal from the original order, but, instead (as here) simply filing a reconsideration motion. That motion would toll the time for taking an appeal. But, the fact that the alien would lose the benefit of the automatic stay would act as a check on aliens filing frivolous reconsideration motions (without filing an appeal) solely for purposes of delay.

The majority, and the parties, compare and contrast the tolling and nontolling rules in various court-efficiency and delay-related aspects. But, on balance, these considerations do not argue strongly for one side or the other. When Congress amended the INA in 1990 (adding, among other things, the consolidation subsection) it did hope to diminish delays. But, the statute explicitly set forth several ways of directly achieving this objective. See, e. g., Immigration Act of 1990, § 545(a), 104 Stat. 5063 (creating INA § 242B(d), 8 U. S. C. § 1252b(d), directing the Attorney General to issue regulations providing for summary dismissal of, and attorney sanctions for, frivolous administrative appeals); § 545(b)(1) (reducing time for petitioning for review from 6 months to 90 days); § 545(d)(1) (directing the Attorney General to issue regulations limiting the number of motions to reopen and to reconsider an alien may file and setting a maximum time period for the filing of such motions); § 545(d)(2) (directing the Attorney General to do the same with respect to the number and timing of administrative appeals). Significantly, the statute did not list an antitolling rule as one of those ways. At the same time, Congress enacted certain

measures apparently designed to make the deportation-order review process more efficient. See, e. g., § 545(d)(2) (asking the Attorney General to issue regulations specifying that the administrative appeal of a deportation order must be consolidated with the appeal of all motions to reopen or reconsider that order; providing for the filing of appellate and reply briefs; and identifying the items to be included in the notice of administrative appeal). In light of these last mentioned provisions, the consolidation subsection would seem consistent with Congress' purposes in 1990 even without an implicit no-tolling rule.

Indeed, the Attorney General has construed one of these last mentioned 1990 amendments as authorizing, in a somewhat analogous situation, a tolling provision roughly similar to that in *Locomotive Engineers*. In § 545(d)(2) of the 1990 Act, Congress asked the Attorney General to issue regulations with respect to "the *consolidation* of motions to reopen or to reconsider [an Immigration Judge's deportation order] with the appeal [to the BIA] of [that] order." 104 Stat. 5066 (emphasis added). In response, the Attorney General has proposed a regulation saying, among other things, that "[a] motion to reopen a decision rendered by an Immigration Judge . . . that is pending when an appeal [to the BIA] is filed . . . shall be deemed a motion to remand [the administrative appeal] for further proceedings before the Immigration Judge . . . . Such motion . . . shall be consolidated with, and considered by the Board [later] in connection with, the appeal to the Board . . . ." 59 Fed. Reg. 29386, 29388 (1994) (proposed new 8 CFR § 3.2(c)(4)). See also 59 Fed. Reg., at 29387 (proposed new § 3.2(b) (parallel provision for motions to reconsider)). This approach, which is comparable to the *Locomotive Engineers* tolling rule, would govern the interaction of administrative appeals and motions to reopen the decision of an Immigration Judge. It seems logical that Congress might want the same rule to govern the analogous situation concerning the interaction of petitions for judicial

review and motions to reconsider or reopen a decision of the BIA.

One final point. The INS argues that the Court should defer to one of its regulations, 8 CFR § 243.1 (1994), which, it says, interprets INA § 106(a) as eliminating the tolling rule. See, *e. g., Shalala* v. *Guernsey Memorial Hospital, ante,* at 94–95; *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 843 (1984). The regulation in question, however, says nothing about tolling. To the contrary, it simply defines "final order of deportation," using language very similar to the language this Court, in *Locomotive Engineers,* interpreted as embodying the tolling rule. Compare the regulation here at issue, 8 CFR § 243.1 (1994) ("[A]n order of deportation . . . shall become final upon [the BIA's] dismissal of an appeal" from the order of a single immigration judge), with the language at issue in *Locomotive Engineers,* 49 U. S. C. § 10327(i) ("[A]n action of the [Interstate Commerce] Commission . . . is final on the date on which it is served"). A lawyer reading the regulation simply would not realize that the INS intended to create an unmentioned exception to a critically important technical procedure. Moreover, the INS itself has apparently interpreted the regulation somewhat differently at different times. Compare Brief for Respondent 13–17 (arguing that the regulation embodies a no-tolling rule) with *Chu* v. *INS,* 875 F. 2d 777, 779 (CA9 1989) (in which INS argued that a reconsideration motion makes the initial order nonfinal, and thereby implies tolling). See, *e. g., Thomas Jefferson Univ.* v. *Shalala,* 512 U. S. 504, 514–515 (1994) (inconsistent interpretation entitled to "considerably less deference" than consistently held agency view). For these reasons, I do not accept the INS' claim that its silent regulation creates a "no tolling" rule.

I would reverse the judgment of the Court of Appeals.