[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 9, 2007
THOMAS K. KAHN
CLERK

No. 06-12742
Non-Argument Calendar

_____

BIA Nos. A95-240-870 & A95-240-871

FRANCISCO HELADIO NATES,
OLGA JUDITH JIMENEZ,
ANDREA NATES,
ALEJANDRA NATES NATES,
JUDY HELENA HERRERA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 9, 2007)**

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Heladio Nates ("Nates") petitions for review of the Board of Immigration Appeals' ("BIA") final order denying his motion to reopen proceedings regarding his asylum application, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition.

## I. BACKGROUND

Nates, a native and citizen of Colombia, entered the United States on September 29, 2000 as a non-immigrant visitor for pleasure with authorization to remain until March 28, 2001.[1] Nates remained in the United States beyond the authorized date. On March 7, 2002, Nates filed an application for asylum, withholding of removal, and CAT relief in which he claimed persecution based on political opinion and membership in a particular social group.[2]

### A. Asylum Application

According to the asylum application and hearing testimony, Nates owned a garment manufacturing company in the San Vicente neighborhood of Bogota, Colombia. Nates collaborated with the local Community Action Board to identify

---

[1]Nates's family arrived in the United States as non-immigrant visitors for pleasure in November 28, 2000 with authorization to remain until May 27, 2001.

[2]Nates's asylum application listed his wife, Olga Judith Jimenez, and three children, Andrea Nates, Alejandra Nates Nates, and Judy Helena Herrera, as derivative applicants. For the sake of simplicity, we refer to Nates as the sole petitioner.

needy families in the area, and he employed single mothers as seamstresses. Based on his community involvement, the Liberal Party of Colombia asked him to become its mayoral candidate in the San Vicente election, but Nates ultimately did not seek election after receiving threatening telephone calls.

On August 7, 1999, an individual who identified himself as a member of the Revolutionary Armed Forces of Colombia ("FARC") called Nates and threatened to kill him for interfering with the FARC's business in San Vicente. The following week, Nates fled to the United States and remained there for four months, during which time FARC members periodically called his family and inquired about his location. After Nates returned to Colombia, he received another death threat from a FARC member on March 15, 2000. Following this phone call, Nates again traveled to the United States and returned to Colombia two months later, but the threatening phone calls resumed in July 2000.

On September 26, 2000, five armed men pushed Nates into a house, and a sixth man in civilian clothes informed Nates that the FARC would kill him unless he supplied them with a regular shipment of t-shirts. Nates sold his business and traveled to the United States, and his family was left to live temporarily in a friend's house in Colombia. FARC members continued to place threatening calls to Nates's old apartment, and his family joined him in the United States on November 28, 2000, shortly after one of Nates's former employees, Gloria

3

Sanchez, informed Nates's wife that the FARC were targeting his daughter.

In support of his asylum application, Nates submitted, inter alia: (1) a sworn declaration, dated April 12, 2004, from Nates's sister, Maria Consuelo Nates Forero, stating that she received threatening calls intended for Nates between January 2001 and December 2003; (2) a Community Action Board certificate, dated July 20, 1999, recognizing Nates's contributions in San Vicente; and (3) numerous reports about the FARC's targeting of elected officials, business leaders, and Community Actions Boards throughout Colombia. The record also included the 2002 United States Department of State Country Report on Human Rights Practices in Colombia ("Country Report"). According to the Country Report, the FARC were a 16,500-member terrorist organization that targeted business owners and candidates for political office. The FARC had grown increasingly violent as it sought to disrupt the 2002 national elections.

In response to the asylum application, the Department of Homeland Security ("DHS") issued a Notice to Appear in August 2002, charging Nates with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). At the removal hearing, Nates conceded removability.

At his April 2004 asylum hearing, Nates testified that his sister occupied his old apartment beginning in January 2001, and the threatening phone calls immediately resumed and continued through 2003. He did not report the FARC's

4

threats to the police because he believed that the FARC had infiltrated the police department. Nates's testimony was consistent with his asylum application, and the Immigration Judge ("IJ") determined that Nates's testimony was credible. Nates's wife also testified that Sanchez had informed her that the FARC had designated their family as "military targets."

At the conclusion of the hearing, the IJ denied the application for asylum, withholding of removal, and relief under CAT in an oral decision.[3] The IJ found that Nates was statutorily ineligible for asylum because he failed to file the application within one year of arriving in the United States. The IJ also denied withholding of removal after determining that the FARC's verbal threats were insufficient to establish a clear probability of future persecution based on protected grounds because the threats were not motivated by Nates's political beliefs. Finally, the IJ dismissed the CAT claim because Nates never reported the threats to police and did not prove that he faced torture with the acquiescence of the government.

Nates appealed the IJ's decision to the BIA in May 2004, claiming that the IJ erred by finding no threat of persecution. On October 21, 2005, the BIA issued a final order adopting and affirming the IJ's determination that the asylum application was untimely and that the FARC's verbal threats did not rise to the

---

[3]The IJ also granted the request for voluntary departure.

level of persecution. Nates filed a motion for reconsideration a month later, which was denied on December 30, 2005.

**B. Motion to Reopen Proceedings**

On March 20, 2006, Nates filed a motion asking the BIA to reopen proceedings based on changed country conditions. Nates argued that newly available evidence established that Colombia's conditions had worsened, that the FARC would likely persecute him based on his status as a military target, and that the FARC continued to make death threats against him.

In support of this motion, Nates submitted: (1) a signed declaration, dated January 17, 2006, from Nates's sister and mother stating that FARC members continued to make threatening calls; (2) a signed declaration, dated January 17, 2006, from a friend of Nates stating that Nates's family moved into his house in late 2000 after receiving several death threats in their old apartment; and (3) five news articles detailing the FARC's destruction of oil wells and violent attacks on police officers and army soldiers. These articles also reported that the number of FARC members had declined to 12,000 in 2005 due to the government's military offensive launched in 2002.

The BIA found that this motion was untimely because it was not filed within ninety days of the final administrative order dismissing his appeal. The BIA also determined that no exception to the timely filing requirement applied because the

proffered evidence was not new or previously unavailable and the evidence did not indicate a material change in country conditions since the asylum hearing date. Accordingly, the BIA denied the motion to reopen the proceedings. Nates timely filed a petition for review.

## II. DISCUSSION

On appeal, Nates argues that the BIA erred in denying the motion to reopen proceedings.[4] Nates contends that he presented new and previously unavailable evidence that established a material change in Colombia's conditions.

An alien must file a motion to reopen removal proceedings "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened . . . ." 8 C.F.R. § 1003.2(c)(2); see also 8 U.S.C. § 1229a(c)(7)(C)(i); Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1150 (11th Cir. 2005) (noting that this ninety-day filing requirement is "mandatory and jurisdictional"). The timely filing requirement does not apply, however, if the alien establishes "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii); see also 8 U.S.C. §

_____

[4]We review the BIA's denial of a motion to reopen for an abuse of discretion. Verano-Velasco v. U.S. Att'y Gen., 456 F.3d 1372, 1376 (11th Cir. 2006). Our review is limited to determining "whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005) (quotation marks and citation omitted).

1229a(c)(7)(C)(ii). Because these regulations plainly disfavor motions to reopen, an alien seeking to reopen proceedings bears a heavy burden of proving that the new evidence would alter the outcome. Al Najjar v. Ashcroft, 257 F.3d 1262, 1302-03 (11th Cir. 2001).

As an initial matter, the BIA correctly found that Nates's motion to reopen was untimely. Because the BIA issued its final administrative decision affirming the IJ's denial of Nates's application on October 21, 2005, Nates had to file his motion to reopen within ninety days of that date.[5] See 8 C.F.R. § 1003.2(c)(2). Because Nates did not file his motion to reopen until March 20, 2006, the motion was untimely.

Nates contends that the exception to the filing requirement applies, however, because his proffered evidence was previously unavailable and established changed conditions in Colombia. See 8 C.F.R. § 1003.2(c)(3)(ii). After review of the proffered evidence, we conclude that the BIA did not abuse its discretion in denying Nates's claim.

First, the declaration from Nates's sister and mother regarding the FARC's continuing death threats was similar to evidence submitted with Nates's asylum

---

[5]The motion to reconsider, which was denied on December 30, 2005, did not toll the ninety-day filing period. See Stone v. INS, 514 U.S. 386, 405-06, 115 S. Ct. 1537, 1549 (1995) (concluding that a motion to reconsider filed with the BIA does not render the initial administrative decision non-final and thus does not toll the review period).

application. Although this declaration addressed threatening calls received after the asylum hearing, Nates submitted a similar signed declaration from this same sister with his asylum application stating that threatening calls continued up to a few months before the April 2004 asylum hearing. Furthermore, the new signed declaration did not establish that the FARC's threats carried a greater risk of actual harm than the earlier death threats considered in the 2004 asylum hearing. Accordingly, the declaration from Nates's sister and mother was not material evidence of changed circumstances in Colombia.

Second, Nates failed to establish that the declaration from his friend was not previously available evidence. This declaration solely addressed Nates's family's move out of their apartment in late 2000, and Nates provided no explanation for why this declaration could not have been submitted prior to the April 2004 asylum hearing. Moreover, this declaration was merely cumulative of Nates's hearing testimony that his family lived with friends following his departure to the United States in September 2000. This declaration concerned no events that took place after the hearing, and it was not material evidence of any changed circumstances.

Finally, the news articles on Colombia only established the FARC's continued violent activity, not any change in Colombia's conditions. These articles were merely cumulative of the reports submitted with the asylum application in describing the FARC's violent assaults on military targets and police officers.

9

More importantly, these articles did not constitute material evidence that Nates faced any greater risk of harm after the 2004 asylum hearing due to changed circumstances in Colombia. These articles documented the FARC's attacks in rural areas far from Nates's neighborhood in Bogota. Even though Nates's wife testified that the FARC considered their family to be "military targets," these articles concerned attacks on police officers and uniformed soldiers, not civilians. Additionally, several articles noted that the FARC's ranks had declined to 12,000 members in 2005 following a government offensive, a significant weakening of the FARC from the 16,500 rebels noted in the 2002 Country Report submitted in the asylum hearing.

Accordingly, none of the proffered evidence established changed circumstances in Colombia after Nates's asylum hearing, and Nates failed to satisfy the exception to the timely filing requirement. We thus cannot say that the BIA abused its discretion in denying his motion to reopen proceedings.

**PETITION DENIED.**