**Not for Publication in West's Federal Reporter
Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 03-2328

JEAN RONY BERNADIN,

Petitioner,

v.

JOHN ASHCROFT, Attorney General,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, <u>Circuit Judge</u>,
Lipez, <u>Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.

---

<u>Kevin MacMurray</u> on brief for petitioner.

<u>Joan E. Smiley</u>, Attorney, Office of Immigrant Litigation, <u>Richard M. Evans</u>, Assistant Director, and <u>Peter D. Kiesler</u>, Assistant Attorney General, on brief for respondent.

---

July 26, 2004

---

**LYNCH**, **Circuit Judge**.  The Board of Immigration Appeals (BIA) ordered Jean Rony Bernadin, a Haitian, deported after he was convicted of domestic violence (Family Abuse-Assault and Battery) against the mother of one of his children.  In doing so, it reversed a grant of asylum by the Immigration Judge (IJ).

Bernadin now attempts to appeal from the BIA's final order denying asylum.  That he may not do; he took no timely action to seek review from that order.  See Stone v. INS, 514 U.S. 386, 405-06 (1995).  His petition is timely only from the BIA's later decision denying his motion to reconsider, and we treat his petition as a challenge to the denial of reconsideration.  Our review of denials of motions to reconsider is for abuse of discretion, Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003); there was no abuse of discretion here.

**I.**

Bernadin entered the United States as a lawful permanent resident on or about April 22, 1993.  Following his conviction in Massachusetts for Family Abuse-Assault and Battery, Mass. Gen. Laws ch. 265, § 13(A), the Immigration and Naturalization Service (INS) issued him a Notice to Appear on August 3, 1998, charging Bernadin as being removable from the United States under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act.[1]  8

---

[1]  At the time, Bernadin actually had three convictions for Family Abuse-Assault and Battery.  However, because two of them were on direct appeal and thus not final judgments, the INS based

-2-

U.S.C. § 1227(a)(2)(A)(iii). This section allows for removal of an alien convicted after entry of an aggravated felony, defined in the Act, § 101(a)(43)(F), as a crime of violence for which the term of imprisonment imposed is at least one year. Id.; 8 U.S.C. § 1101(a)(43)(F). As Bernadin received time served of less than one year for his conviction, the INS withdrew its Notice under § 237(a)(2)(A)(iii), and issued a new Notice under § 237(a)(2)(E)(i), which allows for removal of an alien who has been convicted of, among other things, a crime of domestic violence, regardless of the length of sentence. 8 U.S.C. § 1227(a)(2)(E)(i).

Bernadin sought asylum under § 208(b) of the Act, claiming both that he had suffered from past persecution in Haiti as a result of a cousin's association with the Ton Ton Macoutes and that he had a well-founded fear of future persecution should he be deported. The IJ granted his asylum claim, finding that although Bernadin's past treatment did not rise to the level of past persecution, Bernadin nonetheless did possess a well-founded fear of future persecution should he return to Haiti. A combination of factors led the IJ to that decision. The IJ first noted that, as a criminal deportee, there was a high probability that Bernadin would be jailed immediately on return to Haiti. This probability,

its Notice to Appear solely on the one final judgment. Bernadin has noted that this judgment is the subject of a collateral attack.

the judge explained, together with Bernadin's lack of family to assist in getting him out of jail and his family's previous political associations, meant that Bernadin might be left in jail indefinitely, or worse.

The INS appealed this decision to the BIA, arguing that Bernadin did not establish a well-founded fear of future persecution as a matter of law. Bernadin did not respond. On May 28, 2003, the BIA overturned the ruling of the IJ, agreeing with the INS that Bernadin had no well-founded fear of future persecution. Specifically, the BIA found:

> The respondent claims he would be tortured or killed in Haiti. We find that the evidence does not indicate that he has a well-founded fear or that it is more likely than not that the respondent would be harmed for one of the protected reasons. The respondent also does not meet the requirement that the government would acquiesce in his intentional mistreatment. The respondent did not support his assertion that he was arrested because of his family ties, rather than for some other reason. The Department of State, Profile of Asylum Claims and Country Conditions - Haiti, March 31, 1998, . . . does not support a conclusion that former associates of the Macoutes are persecuted. After so long a period of time, the possibility that someone would seek the respondent out for harm seems remote. Such an act would also be a personal vendetta, not persecution.

The BIA also examined the claim that criminal returnees to Haiti are imprisoned under conditions that amount to persecution:

> The Immigration Judge found that criminal returnees to Haiti are imprisoned under conditions which amount to persecution. We do not disagree that the respondent faces at least a possibility of imprisonment upon return to his country. While the treatment in prison may be

-4-

harsh, these conditions are universal in Haitian prisons and are not directed at the returnees. Moreover, the returnees may be released upon review of their cases. There has been no evidence presented which makes a case that the respondent has a well-founded fear or will more likely than not be intentionally subjected to persecution or torture. The possibility that the respondent may suffer under these poor prison conditions is not sufficient to substantiate a finding that the Haitian government acquiesces in the "torture" of criminal deportees who are detained, as that term is defined by regulation. As a result, we find that the evidence fails to establish a well founded fear of persecution or that the respondent will more likely than not be subjected to treatment rising to the level of torture in Haiti as a result of his status as a criminal detainee.
(citations omitted)

Bernadin did not seek timely judicial review of the BIA's decision.

On June 27, 2003, he instead filed a motion to reconsider, which was denied by the BIA on August 29, 2003. In denying the motion, the BIA stated that Bernadin's motion "fails to persuade us of any error of fact or law in our last decision which would affect the result in his case." Bernadin thereafter petitioned this court for review. We construe the petition, despite its arguments addressed only to the BIA's initial denial of asylum, to be from the denial of the motion to reconsider.[2]

---

[2] We are concerned that counsel for Bernadin failed to inform us of the untimeliness of the petition vis-á-vis the BIA's initial asylum decision and of the later denial of the motion for reconsideration. At the least, counsel has woefully failed to meet his duty of candor to the court. See Mass. R. of Prof'l Conduct 3.3. We expect that such conduct will not recur.

-5-

In petitioning the BIA to reconsider a decision, respondent's motion "shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1). This is distinguished from a motion to reopen, which requires the petitioner to provide new evidence that "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Thus, one petitioning for a motion to reconsider need not present new law or facts that would materially alter the previous decision, but must point to errors of fact or law by the BIA in its previous decision.

In his motion to reconsider, Bernadin claimed that the BIA committed a legal error by determining that there was insufficient evidence of a well-founded fear of persecution without holding that the IJ's finding as to Bernadin's credibility was clearly erroneous. His asylum claim had two prongs. First, he claimed that as a criminal deportee, he will be placed in prison under conditions that amount to torture upon returning to Haiti. Second, he claimed that, due to his cousin's past relationship with the Ton Ton Macoutes, he will upon returning to Haiti be persecuted for his political affiliation. In the motion to reconsider, Bernadin argued that, because the IJ found him to be credible and

he testified that both of the above were true, to find that he did not have a well-founded fear of persecution would require that the BIA find the IJ's credibility determination clearly erroneous, which the BIA did not do. See 8 C.F.R. § 1003.1(d)(3)(i).

This claim is mistaken. The BIA's decision on Bernadin's first argument -- that as a criminal deportee he will be placed in prison under conditions that amount to torture -- rested on two grounds that are independent of the credibility of Bernadin's testimony; namely, the state of prison conditions in Haiti (a fact issue), and the question whether Bernadin's placement in those conditions as a criminal deportee rises to the level of torture as defined by the Act (a legal issue that the BIA reviews de novo). It was well within the discretion of the BIA not to reconsider its finding that "[t]he possibility that the respondent may suffer under these poor prison conditions is not sufficient to substantiate a finding that the Haitian government acquiesces in the 'torture' of criminal deportees who are detained, as that term is defined by regulation."

The BIA's decision denying Bernadin's second argument -- that he has a well-founded fear of persecution based on his family's past political associations -- also rested on two grounds independent of the credibility of his testimony: first, what Bernadin's likely treatment will be upon returning to Haiti due to his past association with a family member involved with the Ton Ton

Macoutes, and second, whether that treatment rises to the level of persecution as a matter of law as defined by the Act. The first ground may rest in part on Bernadin's testimony, but much of it depends on the general treatment in Haiti of those who were involved with the Ton Ton Macoutes in the past, which is a fact issue independent of Bernadin's credibility. The second ground is a question of law for the BIA to consider de novo -- another issue on which the credibility of Bernadin's testimony simply has no bearing. In making the decision not to reconsider its finding that the evidence did not rise to the level of a well-founded fear of future persecution, the BIA was well within its scope of discretion.

In essence, Bernadin's argument is that the BIA had to accept the IJ's finding that his testimony was credible, and that if his testimony was credible, then his claim of future persecution must be allowed. But that is not so. The BIA had ample reasons to deny the motion to reconsider its initial decision, which rested on grounds that did not depend on Bernadin's credibility. The BIA committed no error of law or fact nor did it inexplicably depart from precedent so as to render its decision an abuse of discretion.

We **affirm** the BIA and deny the petition for review.