[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 17, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13746
Non-Argument Calendar

_____

BIA No. A76-997-786

MANES SATINY,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(May 17, 2005)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Manes Satiny, a Haitian national proceeding pro se, petitions for review of the Board of Immigration Appeals's ("BIA's") July 9, 2004, decision affirming an Immigration Judge's (IJ's) order of removal and denial of Satiny's application for asylum and withholding of removal as well as his claims under the United Nations Convention Against Torture ("CAT"). Satiny argues on appeal that (1) the IJ and the BIA should have waived the one-year filing deadline for asylum applications; (2) he established a well-founded fear of future persecution if returned to Haiti; and (3) the BIA was required to grant him a continuance or remand to pursue a change in his immigrant status based on his father's pending naturalization. For the reasons stated more fully below, we deny Satiny's petition in part and dismiss in part.

Satiny entered the United States without inspection on or about November 11, 1998, and filed an application for asylum and withholding of removal, stamped June 12, 2000, but signed on March 16, 2000. Satiny's application for asylum and withholding of removal alleged that he once had been hunted by a former member of the military who did not want him to receive "a promotion" and had threatened to kill him if he did not "leave the area." He further indicated that he and his family were involved in helping to restore a democratic government in Haiti. No further specifics were included, and the only evidence submitted was the State Department's Country Report on Haiti's Human Rights Practices, issued in

2

February 2001.

Satiny was served with a notice to appear on August 21, 2000, charging him with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled or arriving in the United States at a time or place other than as designated by the Attorney General. Satiny conceded to the allegations and charge of removability. At that time he indicated that, in addition to asylum, he sought withholding of removal and relief under the CAT. At his hearing, Satiny, through counsel, argued that he was served with a notice to appear on November 24, 1998, giving the court jurisdiction over his asylum application at that point.

Satiny testified that he was 26 years old, born in La Tortue, Haiti, and arrived in the United States in November 1998 by boat. When asked why he did not file his application for asylum until June of 2000, Satiny responded that he "did not know what to do." Satiny also testified that his father came to the United States many years before Satiny's arrival and had become a lawful permanent resident in 1996. He testified that he did not ask his father what he needed to do because his father was "not responsible to know [how] to do anything."

When asked why he left Haiti, Satiny testified that he worked for the return of "Aristide," but when Aristide returned to Haiti, Satiny was unable to go back to school and he decided to flee the country. Neither Satiny nor anyone in his family

had ever been arrested for any reason while in Haiti, and Satiny testified that he had not ever been physically harmed by authorities in Haiti. The only incident he mentioned was when he and others were going to school one day and were stopped by authorities who told them to return home, which they did, "and nothing happen[ed]." Satiny further testified that he feared returning to Haiti because "any time I listen to the radio I hear that things are getting worse in Haiti and that we have more problems now."

The IJ first determined that the only notice to appear filed in the court was the August 2000 one, and jurisdiction arose at that point, making Satiny's application for asylum untimely because it was filed more than a year after his entry into the United States. Next, the IJ issued an oral decision, finding that (1) Satiny was ineligible for asylum because he came into the United States in November of 1998, but did not file his asylum application until June of 2000, more than one year after his arrival, and (2) Satiny had no justifiable excuse for failing to file his application in a timely fashion. As to the withholding of removal and CAT claims, the IJ found that Satiny "doesn't have a case. He's general and wishy-washy. I don't like going back because one day I was going to school and some authorities stopped me and said, go home. And it's dangerous. That was his whole case." Therefore, the IJ found that Satiny had failed to meet the eligibility requirements for withholding of removal or the CAT and ordered Satiny removed

4

to Haiti.

Satiny appealed to the BIA and, in addition to challenging the IJ's findings, he also requested a continuance or a remand to pursue an immigrant visa petition based on his father's impending naturalization. In a written per curiam opinion issued July 9, 2004, the BIA adopted and affirmed the decision of the IJ, stating that the IJ properly had determined that Satiny's claim for asylum was untimely and that he had failed to meet his burden of proof for withholding of removal or protection under the CAT. The BIA did not, however, address Satiny's request for a continuance to pursue an immigrant visa petition. On July 28, 2004, Satiny petitioned this Court for review of the BIA's July 9, 2004, order.

However, on August 3, 2004, Satiny filed with the BIA a counseled motion to reconsider and reopen his proceedings in light of the fact that the BIA had dismissed his appeal without addressing his request for a continuance to pursue a change in his immigrant status. The BIA denied the motion in a September 22, 2004, order, finding that (1) Satiny had raised the continuance issue for the first time on appeal, and the BIA generally did not consider new evidence on appeal, and (2) in any event, Satiny's argument was without legal merit and reconsideration was not warranted. Satiny did not file a petition for review of this decision.

Because Satiny's removal proceedings commenced after April 1, 1997, the

5

effective date of IIRIRA, this case is governed by the permanent provisions of the INA, as amended by IIRIRA. Gonzalez-Oropeza v. U.S. Attorney Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). We will review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted) (transitional rules case). Insofar as the BIA adopts the IJ's reasoning, we will review the IJ's decision as well. Id. (citation omitted).

On appeal, Satiny first argues that he was not at fault in filing his application for asylum more than one year after his arrival in the United States, and the INS's failure to file the first notice to appear should qualify as an extraordinary circumstance sufficient to exempt him from the timeliness requirements.

As amended by IIRIRA, INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B), provides that an alien may not apply for asylum unless he demonstrates by clear and convincing evidence that the application was filed within one year of his arrival in the United States. A late application for asylum may be considered in the existence of either changed circumstances or extraordinary circumstances relating to the delay in filing the application. See INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D).

However, we have held that "federal courts do not have jurisdiction to review the Attorney General's decision as to timeliness of [an asylum] request.

Pursuant to 8 U.S.C. § 1158(a)(3), the Attorney General's decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances, such that the time limit should be waived, is not reviewable by any court." Fahim v. United States Attorney General, 278 F.3d 1216, 1217 (11th Cir. 2002). Thus, we are without jurisdiction to review the IJ's and BIA's finding that Satiny's asylum claim was untimely, and Satiny's petition for review of that decision is dismissed. We will, however, review Satiny's eligibility for withholding of removal or relief under the CAT. See id. at 1217-18.

Satiny next argues that the IJ should have granted him relief because he established a well-founded fear of future persecution on account of imputed political opinion. To the extent that the IJ's decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The IJ's factual determinations are reviewed under the substantial evidence test, and this Court "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1283-84 (citation omitted).

"As to the appeal of the denial of withholding of removal under § 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3), the findings of fact are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Fahim, 278 F.3d at 1218; see

<u>also</u> INA §§ 242(b)(4)(A)-(B), 8 U.S.C. §§ 1252(b)(4)(A)-(B). Finally, "[w]hen an alien is seeking withholding of deportation, he bears the burden of demonstrating that it is 'more likely than not' that he will be persecuted or tortured upon his return to the country in question." <u>Id.</u>

The United States also has agreed, pursuant to Article 3 of the CAT, not to "expel, return (refouler) or expedite a person to another state where there are substantial grounds for believing that he would be in danger of being subjected to torture." The Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, § 2242(a), 112 Stat. 2681 (1998) (codified at 8 U.S.C. § 1231). Section 2242 of FARRA incorporated the CAT into domestic law. To obtain withholding of removal under the CAT, the burden is on the applicant to show that it is "more likely than not" that he will be tortured in the country of removal. 8 C.F.R. § 208.16(c)(2). For purposes of CAT relief, the term "torture"refers to the intentional infliction of severe pain or suffering, mental or physical, "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity" in order to intimidate or for other proscribed purposes. 8 C.F.R. § 208.18(a)(1). Evidence relevant to the assessment of eligibility for CAT relief includes, but is not limited to: (1) evidence of past torture; (2) the viability of relocation as a means to avoid torture; (3) gross, flagrant or mass human rights violations in the country of removal; and (4) other

8

relevant country conditions.  See 8 C.F.R. § 208.16(c)(3).

The IJ, whose decision was adopted by the BIA, found that Satiny had no case for withholding of removal or relief under the CAT.  He specifically noted that Satiny was "general and wishy-washy" and that Satiny's testimony simply was that he did not want to go back to Haiti because he was once stopped by authorities on his way to school and told to go home, and "it's dangerous" in Haiti.

Satiny's application for asylum and withholding of removal alleged that he had once been pursued by a former member of the Haitian military who did not want him "promoted" and had threatened to kill him.  Satiny never specified the job, what the promotion was, why this person would not want him to have the promotion, or whether the "former member" of the military still was working for the Haitian government.  At his hearing, Satiny did not mention the promotion or the threat, instead testifying that (1) neither he nor anyone in his family had been physically harmed or arrested by authorities in Haiti; (2) one time, while he was on his way to school, authorities told him to return home, which he did without further incident; and (3) he feared returning to Haiti because he heard on the radio that "things" were getting worse there.

Based on Satiny's application and testimony, it cannot be said that the evidence compels a reversal of the IJ's and BIA's decisions that Satiny failed to show that it was more likely than not that he would be persecuted or tortured if

9

returned to Haiti.  See Fahim, 278 F.3d at 1218.  At his hearing, Satiny could not point to a single instance of physical harm or arrest directed at either himself or his family by Haitian authorities, and, therefore, substantial evidence supported the IJ's decision.  Accordingly, Satiny's petition is denied.

Lastly, Satiny argues that he is to become the beneficiary of an "immigrant visa petition" filed by his father, who is presently an applicant for naturalization awaiting his swearing in ceremony.  Satiny argues that, under the Legal Immigration Family Equity Act, Pub. L. No. 106-554, 114 Stat. 2763 (2000) (enacting H.R. 5666, 106th Cong.), he is entitled to a continuance to pursue his immigrant visa petition because after his father is naturalized, he will qualify for an adjustment of status regardless of the manner of his entry into the United States.[1]

We have jurisdiction over a "final order of removal," so long as the petition for review is filed within 30 days.  8 U.S.C. § 1252(a)(1) and (b)(1).  When the BIA dismissed Satiny's appeal in its July 9, 2004 order, the IJ's removal order became final.  See 8 C.F.R. § 1241.1(a).  Accordingly, when Satiny timely filed his petition for review, we had jurisdiction to review the BIA's July 9, 2004, order.

_____

[1] The LIFE Act provides that "if an alien has obtained lawful permanent resident status under section 1104 of the Legal Immigration Family Equity Act and the alien has an eligible spouse or child who is no longer physically present in the United States, the Attorney General shall establish a process under which the eligible spouse or child may be paroled into the United States in order to obtain [certain immigration benefits]. . . . An alien so paroled shall not be treated as paroled into the United States for purposes of section 201(c)(4) of the Immigration and Nationality Act.  Assa'ad v. United States Attorney General, 332 F.3d 1321, 1338 n.21 (11th Cir. 2003).

10

That order inexplicably failed to address his request for a continuance or a remand. We assume, arguendo, that the BIA's failure to address Satiny's request was an abuse of discretion, which ordinarily would require us to remand Satiny's case to the BIA.

However, after Satiny filed his petition for review of the BIA's July 9, 2004, order, he requested that the BIA reconsider that order and reopen the proceedings because the July 9 order failed to address his request for a continuance or remand. The BIA acknowledged that its initial order failed to consider this argument, but found that Satiny's arguments were without legal merit and, accordingly, denied the motion in its September 22, 2004, order. Therefore, assuming that we found error in the BIA's July 9, 2004, order, the only relief we could grant Satiny would be a remand for the BIA to consider his request for a continuance or remand, which the BIA already has done, rendering the issue moot.

Following the BIA's denial of his motion for reconsideration on September 22, 2004, Satiny failed to file a petition for review of that order. The BIA's denial of Satiny's motion for reconsideration constituted a separate order that Satiny could have, but failed to, appeal. Cf. Stone v. INS, 514 U.S. 386, 405-06, 115 S.Ct. 1537, 1549, 131 L.Ed.2d 465 (1995) (decided under the former INA).

Accordingly, the only decision we have jurisdiction to review is the July 9, 2004,

order, and, as discussed <u>supra</u>, no reversible error is present in that order.

Therefore, we deny Satiny's petition for review in part and dismiss in part.

**PETITION DENIED IN PART, DISMISSED IN PART.**