# United States Court of Appeals
## For the First Circuit

No. 05-1875

PIERRE PHILIPPE TCHUINGA,

Petitioner,

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Joseph M. Carreiro, Jr., Law Offices of George P. Katasarakes, P.C., Stephanie F. Dyson, and Dyson Law P.C. on brief for appellant.

Peter D. Keisler, Assistant Attorney General, Terri J. Scadron, Assistant Director, and Manuel A. Palau, Special Attorney, U.S. Dept. of Justice, on brief for appellee.

July 7, 2006

**LIPEZ**, **Circuit Judge**.    Petitioner-appellant Pierre Philippe Tchuinga seeks review of the decision by the Board of Immigration Appeals ("BIA") to deny his motion to reopen or remand removal proceedings so that he may apply for adjustment of status.[1] We hold that the BIA did not abuse its discretion in denying Tchuinga's motion.  Tchuinga is not eligible to adjust his status due to his previous submission of a frivolous asylum application, and we lack jurisdiction to review the frivolous asylum application issue because it was not raised in the motion to reopen.

**I.**

Tchuinga, a citizen of Cameroon, entered the United States on or about September 19, 1997.  He was detained, and the Immigration and Naturalization Service ("INS")[2] charged him with inadmissibility under the Immigration and Nationality Act ("INA") § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), as an immigrant

---

[1] "The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

[2] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice.  Its enforcement functions were transferred to the Department of Homeland Security ("DHS"), pursuant to §§ 441 and 471 of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

who, by fraud or willfully misrepresenting a material fact, sought to procure a visa or other documentation, or admission to the United States or other benefit under the INA. He was also charged with inadmissibility under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who, at the time of his application for admission, did not possess valid unexpired entry or travel documents.

During his initial hearing with the Immigration Judge ("IJ"), Tchuinga conceded inadmissibility under INA § 212(a)(7)(A)(i)(I) but contested the charge of inadmissibility under INA § 212(a)(6)(C)(i). He also filed applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Tchuinga claimed that he had suffered persecution in Cameroon as a member of a militant political party, the Social Democratic Front ("SDF"). The IJ notified him of the consequences of filing a frivolous application for asylum. An INS official reviewed Tchuinga's application and found him to have a credible fear of persecution and paroled him into the United States pending his removal hearing.

On September 16, 1998, at a hearing on Tchuinga's inadmissibility and claims for asylum, withholding of removal, and CAT relief, Tchuinga gave an account of his life in and flight from Cameroon. Tchuinga was a member of the SDF and was eventually appointed to the position of "Director of Information and

Propaganda" for the party.  In that role, Tchuinga served as the spokesperson for the party in his area and encouraged young people to join the group.  In April or May 1997, members of the government party, the Cameroon Peoples' Democratic Movement, approached him and asked him to assist in election fraud by "stuffing the ballot boxes."  Tchuinga refused and reported the request back to SDF party officials.  Approximately one month later, two men in civilian clothing came to Tchuinga's house and handcuffed him.  They also threatened his wife with a gun, telling her to keep quiet as they drugged Tchuinga and led him out of the house.  When Tchuinga later awoke in a small cell, he discovered that he was being held in the same detention facility where his uncle, also an officer with the SDF, had been tortured and killed five years earlier.  A guard told Tchuinga that the detention "will teach you to disobey the government."

Learning that the guard was from Tchuinga's tribe, Tchuinga persuaded him to help him escape in exchange for the money that Tchuinga had in his pocket (approximately 10,000 Cameroon francs).  With that help, Tchuinga escaped and went back to his house.  His wife informed him that he had been missing for seven days.  He sent his wife and children to his mother-in-law's house in another town, and fled to Nigeria.  He asked his cousin to watch his house in Cameroon.  He later learned that his cousin had been arrested, tortured, and questioned as to the whereabouts of

Tchuinga and his family. Tchuinga returned to Cameroon twice, first to obtain a passport from a friend there, and then to obtain a visa to France, where his brother and three sisters lived. He arrived in France in September 1997 and stayed with his brother. Fearful of the close ties between Cameroon and France, Tchuinga applied for a visa to enter the United States, but was denied. He then stole his brother's passport and entered the United States.

After hearing the petitioner's testimony, the IJ set a date for another hearing to give Tchuinga time to produce and authenticate documents that would corroborate parts of his story, particularly his membership and role with the SDF, the whereabouts of his wife and children, and the arrest and torture of his cousin and uncle. At that later hearing on December 23, 1998, Tchuinga testified that he had difficulties producing the requested documents. Upon reviewing an American consulate report that questioned the accuracy of Tchuinga's claims and the authenticity of his documents, the IJ expressed concern that some of the documents that Tchuinga had submitted, including part of his SDF membership information, were fraudulent. She gave him additional time to authenticate those documents and produce additional support for his story, scheduling another hearing for April 20, 1999. At that hearing, Tchuinga again submitted documentation and attempted to explain his difficulties in producing additional corroborating documents.

After considering the evidence, the IJ concluded that Tchuinga was subject to removal under INA § 212(a)(7)(A)(i)(I) for failing to have valid entry or travel documents at the time of his application for admission, which he had conceded, and INA § 212(a)(6)(C)(i) for having sought an immigration benefit through fraud. Specifically, the IJ found that Tchuinga held himself out to be a citizen of France and knowingly presented a document that was not his own (his brother's passport) in an attempt to secure admission to the United States. The IJ found that Tchuinga's brother was able to offer him a safe haven in France and that Tchuinga "accordingly [has] not claimed in any way that the fraud he perpetrated upon the U.S. consulate and attempted to perpetrate upon the INS was occasioned by his flight from his home country or any genuine fears that propelled him to travel to the United States."

Turning to Tchuinga's asylum application, the IJ observed that Tchuinga "has not obtained or satisfactorily explained his failure to obtain documentation from his home country that could authenticate various information that he has provided in his asylum application." The IJ concluded that although Tchuinga had authenticated his membership in the SDF, he has "not verif[ied] that he was in any way harmed."

Examining the documents that Tchuinga had produced, the IJ found that he "has knowingly provided to this Court false

-6-

documentation in an attempt to secure asylum" and thus had knowingly filed a frivolous application for asylum. Specifically, the IJ found that Tchuinga had knowingly presented false documents indicating that he was an appointed official of the SDF party so that he could exaggerate the nature of his membership and the extent to which he was persecuted on account of his role with the party. The IJ issued a decision denying Tchuinga's claims and finding that, because Tchuinga had submitted fraudulent evidence, he was barred from applying for any other benefits under the INA as having submitted a frivolous application. See 8 U.S.C. § 1158(d)(6) ("If the Attorney General determines that an alien has knowingly made a frivolous application for asylum . . . the alien shall be permanently ineligible for any benefits under this Act, effective as of the date of a final determination on such application.").

The petitioner obtained new counsel and, on May 18, 1999, filed a timely motion to reopen his case with the IJ, alleging ineffective assistance of counsel and arguing that he had not knowingly provided false evidence in support of his asylum claim. The IJ denied the motion, and Tchuinga appealed to the BIA. The BIA issued a decision remanding the case to the IJ based on new evidence Tchuinga submitted (an unauthenticated letter from the leader of the SDF, confirming Tchuinga's membership in the SDF, and some additional documents).

During the course of these proceedings, Tchuinga married an American citizen, who filed an I-130 visa application for him, a necessary prelude to an application for adjustment of status.[3] By the time of the remanded asylum hearing with the IJ, the I-130 application had been approved. Tchuinga informed the IJ of the approved visa application. The IJ stated that, in light of her previous determination that Tchuinga was subject to a permanent bar from benefits for knowingly filing a frivolous asylum application, she would not consider an application for adjustment of status. At a subsequent hearing on Tchuinga's asylum claim, the IJ also provided another reason for not considering his application for adjustment of status, noting that a regulation stated that "[a]n arriving alien who is in removal proceedings" is ineligible to apply for adjustment of status, 8 C.F.R. § 245.1(c)(8). Tchuinga's counsel elected not to submit the adjustment application to the IJ, and instead sought a determination from the Bureau of Citizenship & Immigration Services regarding whether it would accept the application.

On June 16, 2003, during the remanded hearing on his asylum application, Tchuinga attempted to supplement his evidence with additional documents, which had not been authenticated. The IJ gave Tchuinga time to authenticate the documents and explain why

---

[3] See 8 U.S.C. § 1255(a) (requiring that an applicant for adjustment of status have "an immigrant visa . . . immediately available to him at the time his application is filed.").

-8-

he had previously submitted fraudulent documents. At the subsequent hearing on October 29, 2003, Tchuinga offered testimony regarding his status in the SDF and his efforts to obtain authenticated documents to support his claims.

The IJ issued her oral decision at the close of that hearing. She noted that, despite several continuances, Tchuinga had failed to submit certain authenticated documents to the court and had failed to explain adequately his prior submission of fraudulent documents. She again concluded that Tchuinga had knowingly provided false documentation regarding his position at SDF as part of his asylum application. She noted certain discrepancies in his testimony and the fact that some of the new documents he had submitted indicated that he was a rank and file member of the SDF, not an appointed leader as he claimed. While the IJ expressed some "misgivings in this particular case" because the IJ did "believe that the respondent was a member of the SDF in Cameroon," the IJ concluded that he lacked credibility regarding "if he was harmed[,] on what account he was harmed, and to what extent he was harmed" in light of his "otherwise incredible and implausible explanations for presenting all of this fabricated documentation to the Court." Based on these findings, the IJ reinstated her April 20, 1999 decision, denying his claims and finding that, because Tchuinga had submitted fraudulent evidence as part of his application for asylum, he was barred from applying for

-9-

any other benefits under the INA for having submitted a frivolous asylum application.

The petitioner appealed the decision to the BIA, but the BIA denied the appeal, finding the IJ's credibility assessment not clearly erroneous and noting the inconsistencies in the documents he presented. The BIA issued its decision on February 14, 2005. Tchuinga did not file a petition for review of this decision. Instead, on February 24, 2005, he filed a motion to reopen with the BIA to apply for adjustment of status, based on our recent decision in Succar v. Ashcroft, 394 F.3d 8 (1st Cir. 2005) (holding that arriving aliens are eligible to adjust their status in proceedings before an IJ).[4] Tchuinga did not raise the frivolous asylum application issue in his February 24, 2005 motion to reopen. On May 17, 2005, the BIA issued a decision declining to reopen the petitioner's case, concluding that the petitioner was barred from adjusting his status due to the frivolous asylum application bar, notwithstanding Succar. On June 9, 2005, Tchuinga filed a petition for review with this Court.

## II.

We have explained the appropriate standard and scope of review of the BIA's denial of a motion to reopen:

---

[4] In Succar, we held that 8 C.F.R § 245.1(c)(8) (a regulation purporting to make "arriving aliens" ineligible to apply for adjustment of status) was invalid as inconsistent with the relevant statute, 8 U.S.C. § 1255. See Succar, 394 F.3d at 36. This is the same regulation at issue in Tchuinga's case.

> A motion to reopen must "state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." Courts recognize two independent, but non-exclusive grounds on which the BIA may deny a motion to reopen: (1) failure to establish a prima facie case, and (2) failure to introduce previously unavailable, material evidence. Even if [a petitioner] meets these requirements, the BIA may still use its discretion to deny relief. We can only overturn the BIA's decision for an abuse of discretion.

Zhang v. INS, 348 F.3d 289, 292 (1st Cir. 2003) (internal citations omitted). Tchuinga argues that the BIA abused its discretion in denying his motion to reopen because (1) as a result of the Succar decision, he is eligible to adjust his status notwithstanding the fact that he is an "arriving alien" and (2) the BIA "erred as a matter of law in affirming the Immigration Judge's finding that the petitioner was subject to the frivolous asylum bar based on the petitioner's inability to authenticate and/or produce certain documents."

The government argues that we lack jurisdiction to review the BIA's affirmance of the IJ's application of the frivolous asylum application bar. Because the frivolous asylum application bar applies, the government argues, Tchuinga is not eligible for adjustment of status notwithstanding the Succar decision, and thus the BIA did not abuse its discretion in denying his motion to reopen.

-11-

We agree that we lack jurisdiction to review the BIA's February 14, 2005 affirmance of the IJ's application of the frivolous asylum application bar. Because of this conclusion, we also agree that the BIA did not abuse its discretion by denying Tchuinga's motion to reopen notwithstanding our decision in Succar.

**A. Jurisdiction to Review the Frivolous Asylum Application Bar**

A petition for review must be filed within 30 days of the date of the final order of removal. 8 U.S.C. § 1252(b)(1). A motion to reopen will not toll the 30-day period for seeking judicial review. See Zhang, 348 F.3d at 292 (citing Stone v. INS, 514 U.S. 386, 395-406 (1995)). Tchuinga did not file a petition for review appealing the February 14, 2005 decision. Instead, he filed a motion to reopen, which the BIA denied in its May 17, 2005 decision. It is this latter decision, denying his motion to reopen, that Tchuinga now appeals. Thus, his appeal is timely only as an appeal of the BIA's denial of the motion to reopen.

Although Tchuinga concedes this point, he argues that the BIA's denial of the motion to reopen "re-affirmed its prior finding" regarding the frivolous application bar. Thus, he argues, we have jurisdiction to review the frivolous asylum application bar issue here. This argument is unpersuasive. Tchuinga filed the motion to reopen his case solely on the basis of our decision in Succar. He did not address the frivolous asylum application bar in his motion to reopen. In its May 17, 2005 decision denying the

-12-

motion, the BIA did not revisit the IJ's reasoning as to the applicability of the frivolous application bar. Instead, it stated that "the respondent has failed to establish prima facie eligibility for adjustment of status . . . inasmuch as the respondent is permanently ineligible for any benefit under the [INA], due to his prior submission of a frivolous asylum application."

Our review is thus limited to determining whether the BIA abused its discretion by denying Tchuinga's motion to reopen on the grounds that Tchuinga is ineligible for adjustment of status notwithstanding Succar. See Nascimento v. INS, 274 F.3d 26, 27-28 (1st Cir. 2001) (limiting review to issues addressed in motion to reopen). We do not have jurisdiction to revisit the BIA's affirmance of the IJ's decision to apply the frivolous asylum application bar.

## B. Denial of the Motion to Reopen

The BIA denied Tchuinga's motion to reopen because he failed to establish a prima facie case for adjustment of status. See Zhang, 348 F.3d at 292 (explaining that the BIA may deny a motion to reopen based on the petitioner's failure to establish a prima facie case for relief). We see no abuse of discretion in this determination. Our decision in Succar removed one impediment to Tchuinga's application for adjustment of status. However, the frivolous asylum application bar still remains. At the time

-13-

Tchuinga applied for adjustment of status, he was barred from such relief under the frivolous asylum application bar.  <u>See</u> 8 U.S.C. § 1158(d)(6).  He therefore has failed to establish a prima facie case for adjustment of status in his motion to reopen.

## III.

Because Tchuinga failed to file a timely petition for review of the BIA's affirmance of the IJ's application of the frivolous asylum application bar, we lack jurisdiction to review Tchuinga's challenge to the frivolous asylum application bar in this petition.  Thus, notwithstanding our decision in <u>Succar</u>, Tchuinga is ineligible for adjustment of status due to the frivolous asylum application bar.  We therefore hold that the BIA did not abuse its discretion in denying his motion to reopen his case to apply for adjustment of status.  We <u>deny</u> Tchuinga's petition for review.

So <u>ordered</u>.

-14-