

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2008

# Muhajidin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1653

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Muhajidin v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1156.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1156

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**IMG-081**                                                      **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-1653

MOCHAMAD MUHAJIDIN,
                                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                              Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96-266-186)
Immigration Judge:  Honorable Miriam K. Mills

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 14, 2008

Before: BARRY, SMITH and HARDIMAN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 22, 2008)

OPINION

PER CURIAM

        Mochamad Muhajidin petitions for review of a Board of Immigration Appeals

("BIA") decision denying his motion to reopen his immigration proceedings.  We will

deny the petition for review.

Muhajidin is a native and citizen of Indonesia. He came to the United States in 2001 as a visitor. In 2003, the Immigration and Naturalization Service issued a notice to appear charging that Muhajidin was subject to removal because he stayed here longer than permitted. Muhajidin conceded that he was removable as charged, and applied for asylum, withholding of removal, and relief under the Convention Against Torture.

At his hearing, Muhajidin relied on the affidavit he submitted in support of his asylum application. Muhajidin stated in his affidavit that his Chinese mother was forced into marriage with his native Indonesian father, and that his father did not allow him to see his Chinese grandparents. Muhajidin's father was very religious, and Muhajidin was sent to Islamic schools. Muhajidin stated that he was harassed in school on account of his Chinese ethnicity.

Muhajidin further attested that he had a Chinese girlfriend named Meiling. His father insisted that Meiling convert to Islam, but she refused. Muhajidin continued to see her, and Muhajidin's father asked him to leave the house. Muhajidin has since been estranged from his family. Muhajidin had a good relationship with Meiling's family. He went to church with them and was baptized. Once when a friend of Muhajidin's father saw Muhajidin enter a Christian church, he hit Muhajidin in the face and threatened to harm him if he saw him go into a Christian church again.

In September 1998, several months after the anti-Chinese riots in Indonesia, Muhajidin stated that he was working in Meiling's family's factory when native Indonesians raided and looted the business. The leader told Muhajidin that the land

2

belonged to native Indonesians, and that the Chinese should not own the business. When Muhajidin told the men that he was half native Indonesian, they told him he should help them loot the factory. Muhajidin refused, and the next thing he remembered was waking up in the hospital with a painful headache. The factory was destroyed.

Muhajidin also reported that in 1999 he returned to his village for the first time since his father had asked him to leave in order to attend a funeral. His father told him to leave the village. The villagers stopped his car by placing a log in the middle of the road. When Muhajidin got out of the car, the villagers called him a traitor and beat him with a wooden stick and their hands. Meiling, who was in the car, drove up to him so that he could jump in the car. She hit several people on the way. Muhajidin stated that he could not go back to the village after this incident. Muhajidin fears that he will be killed or persecuted if he returns to Indonesia because he converted to Christianity.

The IJ found Muhajidin's asylum application untimely, and concluded that, even if he was eligible for asylum, the harm that he claimed to have suffered was personal in nature. The IJ further concluded that Muhajidin did not satisfy his burden of proof for withholding of removal and establish that he would more likely than not be harmed based on his conversion to Christianity if he returned to Indonesia. The IJ stated that Muhajidin did not provide sufficient details about his father's friend's threats, the attack by the villagers, or his claimed inability to relocate to another part of Indonesia. The IJ also concluded that Muhajidin did not cite background evidence showing a pattern or practice of harm to Muslims who converted to Christianity, with the exception of persons in

3

Moloucca and Central Sulawesi. Finally, the IJ decided that Muhajidin did not show that he would be tortured if he returned to Indonesia.

The BIA dismissed Muhajidin's appeal. The BIA agreed with the IJ that Muhajidin's asylum application was untimely. The BIA also concluded that Muhajidin did not show that the family-related events rose to the level of persecution or were on account of a ground protected by statute. The BIA recognized that the assault against Muhajidin when he tried to protect Meiling's family's business was more serious, but stated that, even if this was an act of persecution, the evidence of current country conditions rebutted the presumption of future persecution, and Muhajidin could avoid a future threat to his life or freedom by relocating to another part of Indonesia.[1]

Muhajidin then filed a motion to reopen his proceedings. He argued that new evidence on the conditions of Chinese Christians in Indonesia established a pattern and practice of persecution against this group. He also argued that his account of the intimidation and violence he endured compelled a finding that he was persecuted, and that the persecution of Christians in Indonesia is pervasive. In support of his motion, Muhajidin submitted a report by Dr. Jeffrey Winters, a Northwestern University professor who has testified on the conditions in Indonesia in asylum cases, and news articles.

To the extent Muhajidin argued that the BIA erred in affirming the IJ's decision, the BIA construed the motion as one for reconsideration, but concluded that such a

---

[1] The BIA and the IJ granted Muhajidin voluntary departure, but it does not appear that he has left the United States.

4

motion was untimely. The BIA also concluded that reopening was not warranted because Muhajidin did not show a reasonable likelihood that he could establish eligibility for withholding of removal. The BIA explained that Muhajidin had to show a reasonable likelihood that he would be singled out for persecution or that there was a pattern or practice of persecution of Chinese Christians. The BIA recognized that Dr. Winters stated that country conditions had changed since the end of 2004 and beginning of 2005 in ways that significantly increased the risk and threats faced by Chinese Indonesians, but concluded that Winters' declaration did not show a reasonable likelihood that it is more likely than not that Chinese Christians will be persecuted upon returning to Indonesia. The BIA also recognized that some of the news articles reflected that Chinese Christians continue to face problems in Indonesia, but noted that one article stated that problems had decreased.

Muhajidin filed a counseled petition for review. We review the BIA's denial of a motion to reopen for an abuse of discretion. Borges v. Gonzalez, 402 F.3d 398, 404 (3d Cir. 2005). Under this standard, we will disturb the BIA's decision only if it is arbitrary, irrational, or contrary to law. Id.[2]

Muhajidin argues that the BIA's decision is contrary to our decision in Sukwanputra v. Gonzales, 434 F.3d 617, 637 (3d Cir. 2006), where we remanded the case

_____

[2] We lack jurisdiction to review the BIA's decision dismissing Muhajidin's appeal from the denial of asylum, withholding of removal, and relief under the Torture Convention. Muhajidin's petition for review is only timely with respect to the BIA's order denying his motion to reopen. See Stone v. I.N.S., 514 U.S. 386, 405-06 (1995).

5

so that the petitioners' claim that there was a pattern or practice of persecution of Chinese Christians in Indonesia could be considered. The IJ had not addressed the issue. Id. Here, the BIA explained that in order to reopen the proceedings Muhajidin had to show a reasonable likelihood that he would be singled out for persecution or that there was a pattern or practice of persecution of Chinese Christians. The BIA considered the evidence Muhajidin provided in support of his pattern and practice claim, and concluded that he had not shown a reasonable likelihood that it is more likely than not that Chinese Christians will be persecuted upon returning to Indonesia. The BIA considered Muhajidin's pattern and practice claim, and its decision is not contrary to Sukwanputra.[3]

Muhajidin further argues that the BIA abused its discretion by failing to give weight to Dr. Winters' affidavit and the news articles, which demonstrated a hostile situation for Chinese Christians in Indonesia. Based on our review of these documents, we cannot conclude that the BIA's decision not to reopen the proceedings was arbitrary, capricious, or contrary to law. Dr. Winters' affidavit does not show that there is currently "systematic, pervasive, or organized" persecution against Chinese Christians in Indonesia. Sukwanputra, 434 F.3d at 637. Dr. Winters opined only that the Chinese face increased risks and threats in Indonesia due to the increase in the momentum and radicalism of Islamic extremists, worsening economic conditions, and continued discrimination. See

---

[3] Based on this conclusion, we need not address the Government's additional argument that a motion to reopen may only be based on new evidence, and a motion to reconsider is the proper vehicle to ask the BIA to consider subsequent case law.

App. at 83-92.  Similarly, we cannot find that the BIA abused its discretion in concluding

that the news articles submitted by Muhajidin, which show religious-based violence,

particularly in Central Sulawesi, did not warrant reopening the proceedings.

Accordingly, we will deny the petition for review.